**Frances Elaine HOOD, Plaintiff**

v.

**SEARS ROEBUCK & COMPANY, Defendant.**

**Civil Action No. 3:02–cv–405 WS.**

United States District Court, S.D. Mississippi, Jackson Division.

June 23, 2005.

---

William L. Waller, Sr., Waller & Waller, Jackson, MS, for Plaintiff.

Rick A. Hammond, The Kullman Firm, Jackson, MS, Michael Farrell, for Defendant.

## MEMORANDUM OPINION AND ORDER

HENRY T. WINGATE, Chief Judge.

Before this court is a motion for summary judgment filed by defendant Sears Roebuck & Company ("Sears"). Submitted pursuant to Rule 56(b)[1] and (c),[2] Sears' motion asks this court to find as a

---

1. Rule 56(b) provides as follows:

 **(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

2. Rule 56(c) provides as follows:

 **(c) Motions and Proceedings Thereon.** The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of the hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

matter of law that Sears should be dismissed from this action. Although plaintiff Frances Elaine Hood opposes the motion, this court is persuaded to grant it for the reasons which follow.

## I. *BACKDROP*

At a status conference on November 10, 2004, the court had a discussion with the parties about the defendant's pending motion for summary judgment. After oral argument, the court indicated at that time that it would not rule on the defendant's motion because of lingering questions about whether Sears had taken an inconsistent position in this court and before the Mississippi Workers Compensation Commission. The court indicated it might review the motion at the close of the plaintiff's case-in-chief. The next week, the court entered an order denying Sears' motion for summary judgment; however, the issue of Sears' alleged inconsistent positions came back before the court in the context of Sears' Motions in Limine argued at the pretrial conference on November 22 and 23, 2004. Sears had moved to exclude plaintiff from stating that Sears took inconsistent positions by claiming that workers' compensation was plaintiff's ex-

clusive remedy for her damages for her negligence claims, and then by contesting her workers' compensation claim. That issue bore directly on plaintiff's allegation of bad faith and persuaded this court to reopen and reconsider Sears' summary judgment motion.

## II. *FINDINGS OF FACT*

### 1. Previous Litigation.

In May of 1997, plaintiff first filed suit in this court against Sears Roebuck & Company ("Sears"), alleging sexual harassment under Title VII and state law claims of intentional and negligent infliction of emotional distress. *Hood v. Sears Roebuck & Co.*, Civil Action No. 3:97–CV–362–LN. This court's subject matter jurisdiction was provided by section 706(f)(3) of Title VII which provides for federal court jurisdiction over "actions brought under" Title VII. *See* Title 42 U.S.C. § 2000e–5(f)(3).[3] This court later granted summary judgment for Sears on plaintiff's Title VII claim because plaintiff failed to file a timely EEOC charge. This court then dismissed plaintiff's state law claims without prejudice, said action taken as allowed by Title 28 U.S.C. § 1367.[4] The United

---

**3.** Title 42 U.S.C. § 2000e–5(f)(3) provides that, "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter. Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be

considered a district in which the action might have been brought."

**4.** Title 28 U.S.C. § 1367(a) provides that, "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Subsection (c)* provides that, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law, (2) the claim

States Court of Appeals for the Fifth Circuit affirmed the decision. *Hood v. Sears Roebuck & Co.*, 168 F.3d 231 (5th Cir. 1999).

Plaintiff then re-filed her state law claims in the Circuit Court of Hinds County. Sears removed the case to this court based on diversity jurisdiction, Title 28 U.S.C. § 1332.[5] On March 3, 2000, this court granted Sears' motion for summary judgment because workers' compensation served as plaintiff's exclusive remedy for her negligence claims. *Hood v. Sears Roebuck & Co. and Michael McDonald*, Civil Action No. 3:98–CV–297–WS.

On February 23, 2000, plaintiff filed a workers' compensation claim against Sears and its carrier, Lumbermen's Mutual Insurance Company ("Lumbermen's"). Ms. Hood claimed that she suffered from severe emotional and psychiatric problems caused by harassment from McDonald and her co-workers. Sears turned the claim over to its carrier for handling. Based on its investigation, Lumbermen's decided to contest the claim because there was no evidence that anything had happened at work to cause the plaintiff's admittedly serious emotional/psychiatric problems. Sears never denied the bona fides of her condition. Lumbermens'/Sears eventually settled the claim for $148,000.00. As part of the settlement, plaintiff released Lumbermen's from all claims but reserved the right to bring a "bad faith" claim against Sears.

After receiving her settlement, plaintiff filed this suit alleging that Sears had contested her workers' compensation claim in bad faith. Plaintiff claimed that Sears had engaged in bad faith for not filing the workers compensation claim on her behalf, as early as 1996 and by contesting her workers' compensation claim. Sears emphatically denied it acted with any bad faith.

## 2. Plaintiff's Alleged Relationship With McDonald.

In 1995, plaintiff worked as a part-time sales associate at Sears in the Brand Central Department. In June of that year, Sears hired Mike McDonald to manage the Brand Central Department. (Hood Dep. 7–8). According to plaintiff, she and McDonald developed a relationship that extended beyond work. On one occasion, plaintiff and McDonald traveled together from Jackson to Vicksburg for a dinner date. (Hood Dep. 9–12). On another occasion, plaintiff left a note on McDonald's car that told him where she would be after work. (Hood Dep. 116).

Plaintiff contends that she and McDonald's relationship included sex in plaintiff's home around Thanksgiving in 1995, and again on December 23, 1995. (Hood Dep. 34, 90). The Thanksgiving encounter occurred when plaintiff called McDonald from her home after work and gave him directions to her house. (Hood Dep. 17, 21). McDonald arrived, and asked plaintiff to perform oral sex, which she did. (Hood Dep. 22–23). Plaintiff does not remember if she objected or if she said anything to indicate that she did not like the activity. (Hood Dep. 23–4, 25–6).

substantially predominates over the claim or claims over which the district court has original jurisdiction, *(3) the district court has dismissed all claims over which it has original jurisdiction,* or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction" (emphasis added).

**5.** Title 28 U.S.C. § 1332 provides in pertinent part:

> (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—(1) citizens of different States; . . . .

The December 23rd encounter occurred when McDonald told plaintiff to clock out early from work, and that he would follow her home. (Hood Dep. 34–7). She and McDonald had sexual intercourse in her bedroom. (Hood Dep. 38–9). After the encounter, McDonald and plaintiff left her home and went their separate ways. Plaintiff dined by herself at Pizza Hut. At work the following day, McDonald asked plaintiff how she was doing. Plaintiff does not remember exactly how she responded, but thinks she probably said she was fine and doing okay. (Hood Dep. 47).

Plaintiff perceived that McDonald's attitude towards her changed from "friendly to hostile." Amended Complaint ¶ 21, Civil Action No. 3:98–CV–297–WS. When she asked him about working on Sundays, the plaintiff alleged that McDonald was curt and abrupt with her. He told her that she was no good for the company and that she was just a part-time kid. Ms. Hood was taken back by his abruptness and then decided to complain to other Sears' management about her work schedule and also report the sexual encounters they had had.

### 3. Sears' Investigation.

On Saturday, March 2, 1996, plaintiff called Sears while crying and told store manager Adrian Tinta that she was too upset to come to work. Tinta encouraged plaintiff to come into the store office and discuss her problem. Plaintiff came to the office and told Tinta that she was not getting Sunday hours and that she and McDonald had had sexual encounters the previous fall. At no time did Hood tell Tinta that the sexual encounters were nonconsensual or unwelcomed. (Tinta Dec. ¶ 4–6). Due to the serious nature of plaintiff's allegations, Tinta asked another office employee to sit in on the interview. Tinta also took detailed notes, wrote a statement for plaintiff to sign, and told plaintiff about counseling services available through Sears' Employee Assistance Program ("EAP"). During the interview, Tinta additionally called Erma Mulkey, Sears' District Human Resources Manager in New Orleans, and reported developments to her. (Tinta Dec. ¶ 7; Mulkey Dec. ¶ 2). She then faxed Mulkey a copy of her notes and of plaintiff's statement. (Tinta Dec. ¶ 9).

Four days later, Mulkey summoned McDonald to New Orleans for an interview. Diane Franzese, Sears' Regional Human Resources Manager from Chicago, joined Mulkey in interviewing McDonald. Later that day, Mulkey interviewed plaintiff by telephone to weigh McDonald's response against plaintiff's allegations. (Mulkey Dec. ¶ 4). The next day, Mulkey drove to Jackson and personally interviewed plaintiff and numerous other Sears' employees. (Mulkey Dec. ¶ 6). During this face-to-face interview of plaintiff, Mulkey and Tinta again told her about Sears' EAP counseling services and plaintiff agreed to utilize them. (Tinta Dec. ¶ 10–1).

Following the investigation, Sears could not conclusively determine whether McDonald had engaged in any sexual conduct (much less unwelcomed sexual contact) in violation of Sears' harassment policy. McDonald had denied that any sexual activity occurred and had no history of similar problems. During the investigation, plaintiff never mentioned that the sexual activity was nonconsensual or unwelcomed. Plaintiff also did not report the incidents until two and a half months later, only after her work hours were reduced.

Based on the above reasons, Sears was not convinced that McDonald had sexually harassed plaintiff. Nevertheless, it decided to err on the side of caution and give McDonald a written memo emphasizing Sears' zero tolerance for sexual harassment. Mulkey made a second trip to Jackson to hand-deliver the memo reinforcing Sears' zero tolerance policy. The memo

stated that Sears had mixed feelings about the sexual harassment allegation, but still needed all of its employees to clearly understand the company's zero tolerance sexual harassment policy. (Mulkey Dec. ¶ 8).

The same day that McDonald received the memo, the new store manager, Jeff Sackett, reported to the Jackson store. Shortly thereafter, Sackett had separate conferences with both McDonald and Hood to explain Sears' policy on sexual harassment. Sackett also told McDonald that Sears had a zero tolerance for sexual harassment and that it would not tolerate any retaliation by him against Hood. Sackett also told Hood to report any retaliation. (Sackett Dec. ¶ 3–4).

After reporting the alleged incidents, Hood was not harassed thereafter. (Hood dep. 64). She did not report any further harassment or retaliation. (Tinta Dec. 11; Mulkey Dec. 13). Hood said that McDonald thereafter avoided her "except to say a friendly hello." (Hood dep. 64–66). Two months later, McDonald was terminated on May 11, 1996, for reasons unrelated to Hood's allegations. (Sackett dec. ¶ 8).

### 4. Plaintiff's Reaction.

Hood supposedly had difficulty coping with the situation. Ms. Hood began to engage in obsessive/compulsive behavior in which she repeatedly and openly discussed the graphic details of her sexual encounters with Mr. McDonald. Ms. Hood had a history of openly talking about her sexual adventures with other men with co-workers on the sales floor. She called Mulkey in New Orleans ten or more times and repeated the same thing numerous times. (Mulkey dec. ¶ 13). Hood talked to Tinta twenty or more times. (Tinta dec. ¶ 11). She repeated at length and in vivid, graphic detail her sexual experiences with McDonald. Her compulsion to discuss her experiences in such intimate detail in a work setting was inappropriate and not normal. Sackett had to counsel Hood to stop discussing the details of her sex life with other employees on the sales floor. (Sackett dec. ¶ 6). Ms. Hood alleged that her "emotional state continued to decline, manifested by additional bouts of uncontrollable weeping, depression and absence from work." (Amended Complaint ¶ 40 in Civil Action 3:98–cv–297–WS).

On June 13, 1996, Mulkey and Diane Franzese made another trip to Jackson to check on Hood. They met with Hood along with Sackett for about 1½ hours. During that meeting, it was obvious to them that Hood's mental condition required professional treatment and that she was not capable of performing her normal duties. (Tinta dec. ¶ 14; Mulkey dec. ¶ 9; Sackett dec. ¶ 11). Even the plaintiff admitted that during "this meeting, she described her desires *to ... hurt herself.*" (Ex. 8(f) at ¶ 45).

At that time, Ms. Hood was placed on leave to get professional help. Sears asked the plaintiff about more counseling through the EAP program (Hood dep. at 74); however, Hood went to see her own doctors.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. *Hill v. London, Stetelman, & Kirkwood, Inc.,* 906 F.2d 204, 207 (5th Cir.1990). The evidence in the record is to be viewed in the light most favorable to the nonmoving party. *Newell v. Oxford Management Inc.,* 912 F.2d 793, 795 (5th Cir.), *reh'g denied,* 918 F.2d 484 (1990). To prevail on a motion for summary judgment, the moving party has the initial burden of demonstrating that there is no genuine issue as to any material fact and that

it is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corporation v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment need not produce evidence showing the absence of a genuine issue of material fact with respect to an issue on which the nonmoving party bears the burden of proof. *See Celotex Corporation*, 477 U.S. at 325, 106 S.Ct. 2548. Rather, the party moving for summary judgment need only show that the party who bears the burden of proof has adduced no evidence to support an element essential to its case. *Id.* Once the moving party has made an initial showing, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. In order to avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Rule 56(e) requires that the nonmoving party "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587–90, 106 S.Ct. 1348. The Court's

function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

## IV. CONCLUSIONS OF LAW

The court's jurisdiction over this dispute is founded upon diversity of citizenship, Title 28 U.S.C. § 1332. Accordingly, this court applies the substantive law of Mississippi to this dispute. *Erie R.R. Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

 To succeed in an action for a bad faith denial of workers' compensation benefits under Mississippi law, plaintiff must show that: (1) a workers' compensation insurance contract existed between a carrier and plaintiff's employer; (2) the carrier denied plaintiff's compensable workers' compensation claim without a legitimate or arguable reason; and (3) the denial of benefits constituted willful and intentional or malicious wrong. *Rogers v. Hartford Acc. & Indem. Co.*, 133 F.3d 309, 312 (5th Cir.1998). In order to prevail, a defendant needs to show *only* that it had an arguable reason for its actions.

### 1. Sears' Arguable Reasons.

Sears further argued that it had an arguable reason to contest her workers' compensation claim because it had sworn proof that (1) the alleged sexual encounters never happened and (2) even if they had, they took place at her home and were not within the course and scope of her employment or his employment.[6] The plaintiff's re-

6. The investigation gave Sears arguable and legitimate reasons to contest in good faith whether plaintiff's claim was work related. McDonald denied in his initial interview and later under oath that he had engaged in any sexual activity with plaintiff. He also explained that plaintiff's reduction in work hours did not result from harassment, but rather from the automated computer-schedul-

ing program that gave the least productive employee the least amount of hours. The investigation further revealed that plaintiff had a long history of mental/emotional problems, and that she often spoke openly and graphically while on the sales floor about her sexual activity with various partners, including McDonald.

sponse was that "all men lie about sex." Plaintiff's response hardly shows that Sears did not rely in good faith on McDonald's denial of any sex to contest her claim.

Sears explained that it did not report Ms. Hood's mental condition to the Workers Compensation Commission in 1996 because there was no indication that anything had happened to the plaintiff at work that was above and beyond the normal incidents of employment. At that time, the plaintiff never asked to file a workers' compensation claim. The plaintiff now alleges that she was harassed at work in 1996 by her co-workers including McDonald; however, she made no allegation of any conduct that was above the ordinary incidents of employment. She alleged that there were rumors about her and that McDonald was abrupt, distant or even inconsiderate of her; still, such allegations do not rise above the ordinary incidents of employment. Without that level of proof, a mental injury is not compensable under Mississippi's workers' compensation law.

In response to Sears' showing that it had arguable reasons for its handling of her workers' compensation claims, the plaintiff attempted to make a triable issue by arguing at the recent conferences before the court that (1) Sears took inconsistent positions, (2) Sears failed to file a workers compensation claim in 1996, (3) Sears had no medical expert at the Workers' Compensation hearing to refute the opinions of her medical experts that her mental condition was caused by McDonald's sexual harassment, and (4) Sears failed to investigate whether her deteriorating mental condition might qualify as a workers compensation injury. Each of these matters will be addressed below.

### 2. Inconsistent Positions.

Sears did not take an inconsistent position in the earlier litigation. Sears simply made the legal argument that any negligence claims were barred by the exclusive remedy provisions of the Workers' Compensation statute. Sears did not thereby concede that Ms. Hood had a good negligence claim or a good workers' compensation claim. It was not therefore inconsistent for Sears later to contest the compensability of her workers' compensation claim on grounds that any mental injuries were not work-related.

### 3. Failure to File.

The plaintiff's argument that Sears should have reported her mental condition to the Workers' Compensation Commission in 1996 lacks any evidentiary basis because Ms. Hood never alleged any causal incident in the workplace that would trigger a workers compensation claim. The plaintiff simply alleged that McDonald was abrupt with her and that co-workers shunned and/or avoided her. Since that allegation does not rise above the level of ordinary incidents of employment, Ms. Hood has not stated a prima facie case of a compensable mental injury. Hence, Sears was under no obligation to report her mental condition to the Workers Compensation Commission. Subsequent to the investigation, Sears came to the realization that the plaintiff needed serious professional help. She was then placed on leave. While her deteriorating mental condition had become obvious to Sears, there was no evidence

---

Since Ms. Hood admitted that the alleged sexual encounters took place in her home, Sears had grounds to argue in good faith that any sexual conduct, if it did occur, was non-work related because it happened outside the course and scope of both McDonald's and Plaintiff's employment since McDonald denied to Sears during its 1996 investigation and later in his 2001 deposition that any sexual activity occurred at all, Sears had grounds to argue in good faith that there was no sexual encounter at all.

shown that would suggest to a reasonable person that her condition was caused by anything that had happened at work.

Counsel for the plaintiff acknowledged during oral argument that when Sears made the exclusive remedy argument in 2000, he replied to the court at that time that the plaintiff did not have a workers' compensation claim. He now argues that Sears was guilty of bad faith in not filing a claim during that period when he did not do so either.

Sears was entitled to wait on the court's decision on the exclusivity issue. Once the court ruled, the plaintiff shortly thereafter filed her own workers' compensation claim. Sears cannot be faulted with bad faith for not beating her to the Workers' Compensation Commission. In addition, the plaintiff settled her workers' compensation claim for $148,000.00, so she was not prejudiced by Sears' not filing a claim first.

### 4. Medical Expert.

■ Ms. Hood contended that Sears' contested her claim was in bad faith because it did not have a medical expert to refute the opinions of her experts at the Workers' Compensation hearing. Ms. Hood argued that her experts would testify that her mental injuries were caused by the alleged sexual encounters with McDonald. The plaintiff argued that since Sears had not designated any experts to testify, Sears had no evidence to refute her evidence of sexual harassment. According to the plaintiff's argument, Sears' continued contest of her claim was therefore in bad faith. It must be noted that the plaintiff's doctors were relying on her account of the events to form their conclusion of causation.

Even without medical testimony, Sears still had a solid arguable reason to contest her claim. The alleged harasser, Mike McDonald, adamantly denied any sexual encounter—unwelcomed or otherwise.

Ms. Hood said there was sex and McDonald said there was no sex, a classic *"he said—she said"* situation. No number of medical experts would make this case any less of a *"he said—she said"* dispute. As the plaintiff's attorney argued at a recent hearing, "it was a hotly contested matter before the Workers' Compensation." The existence of a viable dispute means that both sides had arguable reasons to litigate the issue. *Sobley v. Southern Natural Gas Company,* 302 F.3d 325, 342 (5th Cir. 2002) (recognizing that an arguable basis is a reason sufficiently supported by credible evidence as to lead a reasonable insurer to contest and deny a claim). An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts. *Blue Cross & Blue Shield, Inc. v. Campbell,* 466 So.2d 833, 851 (Miss. 1984). Given the hotly disputed claims, Sears clearly had an arguable reason and is therefore entitled to summary judgment.

The *bona fides* of Sears' arguable reason was bolstered during the course of the Workers' Compensation proceeding. Initially, Sears had to rely on the investigative reports that Ms. Mulkey had prepared in March 1996 about McDonald's denials. In 2001, Sears was later able to locate and subpoena McDonald to a deposition in Memphis. In his deposition, McDonald categorically denied the plaintiff's claims of sexual contact. He stated that he never went on a date with plaintiff, never interacted with plaintiff outside of work, and never had any sexual contact with plaintiff. He further stated that due to his termination on a non-related matter, he fostered hard feelings against Sears and would not be inclined to help Sears. McDonald further explained that he had not changed the plaintiff's hours. He explained that Sears' automated computer program cut plain-

tiff's hours because she was the worst sales performer in the Brand Central Department. He also said that other employees had made him aware of plaintiff's prior history mental and emotional instability and her tendency to describe her sexual activity in graphic details to coworkers on the sales floor.

### 5. Investigation.

Finally, the argument that Sears failed to conduct an investigation is simply without merit. When challenged by the court, the attorney for Ms. Hood had no evidence to refute the undisputed fact that Sears had conducted a thorough investigation of the underlying facts in March 1986. Without repeating the details here, the plaintiff cannot point to any additional evidence that Sears would have discovered with yet another investigation.

### V. CONCLUSION

Based on the undisputed proof that Sears had *bona fide* arguable reasons for its actions in connection with the plaintiff's workers compensation claim, Sears is entitled to summary judgment as a matter of law. The court will enter a separate judgment in accordance with the local rules.