# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-IA-01364-SCT

*BLOSSMAN GAS, INC.*

*v.*

*SHELTER MUTUAL GENERAL INSURANCE
COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2004 |
| TRIAL JUDGE: | HON. LARRY EUGENE ROBERTS |
| COURT FROM WHICH APPEALED: | WAYNE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | TIMOTHY D. MOORE |
| | EDWARD J. CURRIE, JR. |
| ATTORNEY FOR APPELLEE: | SAMUEL S. McHARD |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 01/19/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Shelter Mutual General Insurance Company filed suit against Blossman Gas Incorporated (Blossman) in the Circuit Court of Wayne County.  The jury returned a verdict in favor of Blossman.  After the jury submitted its verdict, Shelter Mutual General Insurance Company (Shelter), filed a motion for a new trial.  The circuit court granted the motion in accordance with Rule 59 of the Mississippi Rules of Civil Procedure.  As a result, Blossman filed this interlocutory appeal.  Finding the evidence to be overwhelmingly contrary to the verdict rendered by the jury, we hold the trial judge did not abuse his discretion in granting a new trial. We therefore affirm the judgment of the trial judge.

**FACTS**

¶2. In 1995 Dennis and Paula Singleterry began construction of a home in Wayne County, Mississippi. The building specifications for the home called for two separate wings of the home, separated by a three-car garage. The slightly smaller wing of the home was constructed as a residence for Dennis's mother, Zella Singleterry. The larger wing of the house was reserved for Dennis, Paula, and their children.

¶3. With the exception of three gas fireplaces, all utilities in the Singleterry residence were to be electric. Blossman was contracted to install the three fireplaces and a liquified petroleum (LP) gas system. The first fireplace was installed in the living room of Zella's wing of the house. The remaining two fireplaces were installed in the living room and master bedroom of Dennis and Paula's wing.

¶4. Kevin Davis and Richard Little were the Blossman service technicians assigned to install the gas lines and three fire place units at the Singleterry home. In October 1996, Zella's fireplace was the first of the three to be installed by Davis and Little. Davis completed and signed a safety form indicating that Zella's fireplace had been tested, and no leaks were present. However, when the remaining fireplaces were installed four months later, neither Davis nor Little documented a system test to show that no leaks were present.

¶5. The installation of the fireplace unit in Dennis and Paula's bedroom required a flex connector of a length greater than thirty-six inches, however Davis and Little were not equipped with the appropriate connector. Instead, Davis and Little pieced together two shorter connectors with a brass adaptor, rather than using one solid connector.

¶6.     On December 26, 1998, Dennis, Paula and their three children left their home in Wayne County to visit relatives in Huntsville, Alabama.  Prior to their departure, all appliances in the house were turned off except the pilot lights in the fireplaces.  Zella remained in her wing of the house while the rest of the family was in Huntsville.

¶7.     At approximately 5:00 a.m. on December 27, 1998, Zella was in bed when she heard what sounded "like a real big boom of thunder."  Zella ran to the window and observed Dennis and Paula's bedroom on fire.  Zella immediately called the fire department, who arrived approximately thirty minutes later.  The fire consumed Dennis and Paula's wing and destroyed the entire wing of the home.  Zella's wing also suffered extensive smoke damage as a result of the fire.

¶8.     Both wings of the home were insured pursuant to a policy issued by Shelter. Shelter satisfied their obligations to the Singleterrys in accordance with the insurance policy.  Shelter then sought reimbursement from Blossman in a subrogation claim for the money paid on the Singleterrys's insurance policy.   Shelter alleged Blossman was responsible for the fire at the Singleterry home and requested a jury trial in the Circuit Court of Wayne County.

¶9.     The parties presented their evidence before a jury in the circuit court over a week long trial.  The case was submitted to the jury, who deliberated and returned a unanimous verdict in favor of Blossman.   Shelter subsequently filed a motion for a new trial claiming the jury verdict was against the substantial weight of the evidence.  The circuit court granted Shelter's motion stating that the jury's verdict shocked the conscience of the court.  After the circuit court granted the motion for a new trial, Blossman filed this interlocutory appeal.

3

## DISCUSSION

### I. Whether the trial court abused its discretion in setting aside the jury's verdict and granting a new trial

¶10. Rule 59 of the Mississippi Rules of Civil Procedure authorizes the trial court to set aside a jury verdict and grant a new trial whenever justice requires. *White v. Yellow Freight Sys., Inc.*, 905 So. 2d 506, 510 (Miss. 2004). This Court "regard[s] it as accepted law that our trial courts have the authority to set aside a jury verdict, where, in the exercise of their sound discretion, they regard such a verdict as being contrary to the substantial weight of the evidence." *C & C Trucking Co. v. Smith*, 612 So. 2d 1092, 1099 (Miss. 1992); *see* Rule 59(a)(1) M.R.C.P. "On appeal, this Court may reverse the granting of a new trial only when the trial court has abused its discretion." *White*, 905 So. 2d at 510 (citing *Green v. Grant*, 641 So. 2d 1203, 1207 (Miss. 1994)).

¶11. As the trial commenced, Shelter and Blossman asserted competing theories as to the cause of the fire that destroyed the Singleterry home. First, Shelter alleged an explosion and ensuing fire occurred in the home due to a gas leak caused by Blossman's faulty installation of an LP gas fireplace. On the other hand, Blossman offered a theory that the cause of the fire could not be legitimately determined, and regardless, the LP gas fireplace was properly installed. In addition, Blossman maintained there is no evidence to indicate an explosion took place.

¶12. During the course of the trial, Shelter called a number of witnesses. Shelter's witnesses included Dennis Singleterry, Paula Singleterry, Zella Singleterry, the Blossman employees

4

who installed the LP system at the Singleterry home and various experts. Shelter's experts consistently testified that the source of the fire was the gas fireplace in Dennis and Paula's master bedroom. Particularly, Shelter's experts maintained that an improperly installed connector on the fireplace leaked gas into an area behind the unit until the concentration of gas was enough to ignite and cause an explosion.

¶13. Shelter presented the following facts to the jury in order to demonstrate that Blossman was responsible for the destruction of the Singleterrys's home:

1. The gas fireplace in the living room and the gas fireplace in the master bedroom were the only gas appliances in the wing of the house that was destroyed;

2. The entire LP gas system, including all three gas fireplaces, was installed, serviced and maintained solely by Blossman;

3. Blossman employees installed the fireplace inserts without reading the installation instructions;

4. Blossman employees assembled fireplace flex connectors and used gooey thread sealant or "pipe dope."[1] "Pipe dope" was discovered on the flare seat of the connectors, which are always supposed to be kept entirely clean;

5. During installation of the fireplace inserts, Blossman employees did not have a 60-inch flexible connector on site, so they pieced together two shorter flexible connectors with a noncompliant brass male-to-male connector in order to meet the necessary length;

6. Blossman employees did not document a leak check on the gas fireplace inserts in Dennis and Paula's wing, which is in violation of Blossman policy and National Fire Prevention Association 54;

---

[1] During the trial, experts testified the substance "pipe dope" can dry out, crack, and cause gas leaks.

5

7.  Dennis and Paula's wing of the home was vacant on December 26, 1998, and all appliances were shut off except the pilot lights on the two fireplaces;

8.  Zella heard an explosion which sounded like thunder;

9.  Immediately after the explosion, Zella observed flames in Dennis and Paula's bedroom;

10.  The Singleterrys picked up clear glass that was free from soot[2], in the yard between the wings, indicating the glass was probably blown out as a result of the explosion that Zella heard;

11.  The concrete under the fireplace in the master bedroom spalled, evidencing the presence of an intense amount of heat.

Blossman predominantly relied on expert testimony to advance their theory that the fireplace insert did not cause the fire.  Blossman's experts insisted that the fireplace unit was installed properly and was free of leaks.  They also averred that neither the origin, nor the cause of the fire could be determined because of the amount of damage that occurred.  In order to demonstrate they were free from negligence, Blossman relied on the Singleterrys not smelling gas before the fire occurred.

¶14.  After Blossman and Shelter presented their theories to the jury over several days, they were charged with the responsibility of reaching a verdict.  After deliberating for approximately thirty-six minutes, the jury returned a verdict in favor of the defendant, Blossman.  Once the verdict was rendered, several members of the jury approached and hugged counsel for Blossman and Blossman's corporate representative at the trial.  As a result, Shelter

---

[2]  During trial expert testimony revealed clear glass free from soot is an indication  an explosion may have occurred as opposed to soot filled glass that is normally consistent with glass that is burned and broken as a result of flames, and not an explosion.

filed a timely motion for new trial alleging the jury's verdict was not only against the substantial weight of the evidence, but also was the result of bias, passion and prejudice.

¶15. The trial judge heard Shelter's motion in open court approximately three months after the trial ended. At the motion hearing, the judge considered arguments from counsel for both Shelter and Blossman. After both parties submitted their arguments, the trial judge revealed that on the night the trial ended he dictated his private thoughts regarding the case to the court reporter. The judge read those recorded personal thoughts into the record at the motion hearing, and propounded that the evidence of the submitted case weighed heavily in favor of Shelter's account of the cause of the fire. The judge ruled out Blossman's defense of an unknown origin and cause of the fire by stating "[Blossman has] no specific explanation of why the fire occurred or where [] it originated. Fires of this nature simply as a matter of common human experience do not occur by happenstance." The judge reasoned the jury's verdict in favor of Blossman shocked the conscience of the court, and was against the overwhelming weight of the evidence. Once the trial judge completed the reading of his statement into the record, he echoed it by stating: "I can't draw any conclusion other than that this verdict is against the overwhelming weight of the evidence and shows bias, prejudice and passion on the part of the jury. . . ." The trial judge subsequently granted Shelter's motion for a new trial. We agree.

¶16. This Court gives jury verdicts great deference, and will only overturn a verdict when it is contrary to the weight of the evidence and witness credibility. *Venton v. Beckman*, 845 So. 2d 676, 686-87 (Miss. 2003) (citing *Ducker v. Moore*, 680 So. 2d 808, 811 (Miss. 1996)).

7

However, a verdict is deemed against the overwhelming weight of the evidence when no reasonable hypothetical juror could have reached the conclusion of the jury. *Brandon HMA, Inc. v. Bradshaw*, 809 So. 2d 611, 616 (Miss. 2001). Any conflicts in the evidence presented at trial are to be resolved by the jury. *Venton*, 845 So. 2d at 687 (citing *Jackson v. Griffin*, 390 So. 2d 287, 289 (Miss. 1980)).

¶17. The case at bar is fact driven, and the totality of the evidence is overwhelmingly in Shelter's favor. This is not a case where the evidence presented at trial was in dispute and differing conclusions could be reached. *McKinzie v. Coon*, 656 So. 2d 134, 140 (Miss. 1995). Thus, the judge granted a new trial based on the wealth of evidence overwhelmingly in favor of Shelter, and contrary to the jury's verdict.

¶18. This Court held in *C & C Trucking*, "[t]here is no way we could ever become as familiar with the proceedings at trial as the trial judge. We should give substantial weight, deference and respect to the decision of the trial judge in matters such as this." 612 So. 2d at 1099.

¶19. Here, the trial judge wisely and promptly dictated his personal thoughts on this issue to the court reporter immediately after trial, while it was fresh on his mind, due to his concerns about the proof, as well as bias and prejudice of the jury in deciding its verdict in favor of Blossman. We hold that the trial judge properly weighed and determined that the jury's verdict was biased, prejudiced, passionate and against the overwhelming weight of the evidence. Moreover, after a thorough review of the record, we too find that no reasonable juror could have returned such a verdict.

¶20. In addition, because we agree with the trial court's finding that no reasonable juror could have found for the defendant, we would have been inclined to affirm a motion for judgment notwithstanding the verdict in this case had one been filed. However, the trial court correctly and judiciously stated:

> This motion before the Court at the present time is brought solely by the Plaintiff under Rule 59 alleging that the Plaintiff is entitled to a new trial. The Plaintiff did not and has not and did not timely file a motion under Rule 50(b). As I read the rule, only a party has standing to bring a motion for judgement notwithstanding the verdict under Rule 50, and it must be made not later than ten days after entry of judgement on a verdict. That being the case, I am not legally authorized in my judgement to be considering a motion for judgement notwithstanding the verdict. Having said that, if such a motion were before me, my inclination would be to grant it, but it's not. The only matter before me is a motion for new trial. I intend to grant that motion and set aside this verdict and have this case scheduled for a trial before another jury at some future date.

Thus, Shelter's motion for a new trial is the only motion the trial court was authorized to consider. In light of the overwhelming evidence, we therefore find the trial court did not abuse its discretion in ordering a new trial.

## CONCLUSION

¶21. For the above and foregoing reasons the trial court did not err in granting the motion for a new trial. The evidence in this case is overwhelmingly contrary to the verdict rendered by the jury. Hence, the trial judge did not abuse his discretion, and the order for a new trial was proper. Therefore, the judgment of the trial court is affirmed.

¶22. **AFFIRMED.**

**WALLER, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. COBB, P.J., DIAZ, GRAVES AND RANDOLPH, JJ., NOT PARTICIPATING.**