# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00529-SCT

*UNITED SERVICES AUTOMOBILE
ASSOCIATION ("USAA")*

*v.*

*ADMIRAL JAMES LISANBY AND WIFE,
GLADYS LISANBY*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/06/2009 |
| TRIAL JUDGE: | HON. BILLY G. BRIDGES |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JANET G. ARNOLD |
| | CHARLES G. COPELAND |
| | W. SHAN THOMPSON |
| | JAMES DENNIS BOONE |
| ATTORNEYS FOR APPELLEES: | DON BARRETT |
| | DAVID M. McMULLAN, JR. |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND RENDERED IN PART. ON CROSS APPEAL: AFFIRMED - 11/18/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., RANDOLPH AND KITCHENS, JJ.**

**KITCHENS, JUSTICE, FOR THE COURT:**

¶1.     This case involves an alleged breach of contract and bad-faith denial of a homeowners' insurance claim following Hurricane Katrina. The jury awarded the plaintiffs more than $900,000 in compensatory damages, but the trial judge directed a verdict in favor of the defendant on the issue of punitive damages. USAA appealed and the Lisanbys cross-

appealed. Because the defendant demonstrated an arguable basis for its denial of claims, the trial judge erred in submitting the emotional damages claim to the jury and in awarding attorneys' fees and litigation expenses to the plaintiffs. Accordingly, the plaintiffs' cross-appeal regarding punitive damages and attorneys' fees necessarily must be denied.

**Facts**

¶2.   Retired Rear Admiral James Lisanby and his wife, Gladys Lisanby, owned a two-story home and a cottage in Pascagoula, Jackson County, Mississippi. Their property was located roughly one hundred feet from the Mississippi Sound. As Hurricane Katrina approached, the Lisanbys fled their home. When they returned a few days later, they found what remained. The bottom floor of their residence was almost completely gone, and the cottage and garage were no longer present. The second floor of their home sustained substantially less damage than the first floor; unlike the furniture that had been on the first floor, the Lisanbys were able to salvage all of the furniture from the second floor.

¶3.   United Services Automobile Association (USAA) provided homeowners' insurance for the Lisanbys, with coverage limits of $505,000 for the dwelling, appurtenant structure limits of $50,500, additional coverage for the cottage of $22,000, personal property limits of $378,750, and additional living expense limits of $101,000. The Lisanbys also had $350,000 in flood insurance coverage and were paid the flood policy limits. However, the insurance carrier maintained that the majority of the damage was caused by storm surge, and thus was excluded; therefore, USAA paid only $46,354.21 pursuant to the homeowners' policy.

2

¶4. The Lisanbys filed a complaint in the Jackson County Circuit Court against USAA, alleging breach of contract and bad-faith denial of their claims. They sued for damages for emotional distress, punitive damages, attorneys' fees, and expenses.

¶5. After a ten-day trial, the jury returned a unanimous verdict awarding the Lisanbys a total of $909,641 in compensatory damages. The special verdict apportioned the damages as follows: $478,141 in additional wind damage to the house; $50,500 for wind damage to the garage; $197,000 in additional wind damage to the contents of all three buildings; $12,000 in additional living expenses; nothing in lost rent for the cottage; and $86,000 per plaintiff for emotional distress. The trial judge declined to submit the issue of punitive damages to the jury, but awarded the plaintiffs an additional $302,920.44 in attorneys' fees and $211,069.47 in litigation expenses.

## Issues

¶6. USAA raises numerous points of error on appeal, claiming: (1) the physical facts and photographic evidence demonstrate as a matter of law that storm surge caused the majority of the damages, warranting a directed verdict in USAA's favor, or, in the alternative, requiring a new trial; (2) the evidence does not support an award for emotional distress; (3) the trial court erred in granting the Lisanbys' motion for attorneys' fees and expenses; (4) the trial court erred in denying USAA's motions for a change of venue; (5) the trial court abused its discretion in admitting evidence of replacement costs; (6) the trial judge erred in denying USAA's motions for mistrial; or, (7) in the alternative, cumulative errors warrant reversal. The Lisanbys cross-appeal, arguing that the trial court erred by failing to allow the jury to consider punitive damages and in capping attorneys' fees at one-third of the verdict.

3

**Discussion**

**I. The evidence of wind damage was sufficient to support the verdict, and the verdict was not against the overwhelming weight of the evidence.**

¶7.     USAA argues that the evidence established, as a matter of law, that storm surge, an excluded cause, caused the majority of the damage to the Lisanby home, and thus USAA was entitled to a judgment notwithstanding the verdict.  Specifically, USAA argues that, because the second floor remained intact while the first floor was virtually destroyed, the damage to the first floor must have been caused by flooding.  In the alternative, USAA argues that it is entitled to a new trial because the overwhelming weight of the evidence points to water damage.

¶8.     The standard of review for the denial of a motion for a judgment notwithstanding the verdict (JNOV) is *de novo*.  *U.S. Fid. and Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 964 (Miss. 2008) (citing *Adcock v. Miss. Transp. Comm'n*, 981 So. 2d 942, 948 (Miss. 2008)).  "A motion for JNOV is a challenge to the legal sufficiency of the evidence, and this Court will affirm the denial of a JNOV if there is substantial evidence to support the verdict."  *Id.* (quoting *Adcock*, 981 So. 2d at 948).  On appeal, we will "consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence."  *Id.* (quoting *Spotlite Skating Rink, Inc. v. Barnes*, 988 So. 2d 364, 362 (Miss. 2008)).  "In essence, judgments as a matter of law present both the trial court and the appellate court with the same question – whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so

4

deficient, that the necessity of a trier of fact has been obviated." *White v. Stewman*, 932 So. 2d 27, 32 (Miss. 2006).

¶9.     The standard of review for the grant or denial of a motion for a new trial is abuse of discretion. *White v. Yellow Freight Sys., Inc.*, 905 So. 2d 506, 510 (Miss. 2004) (citing *Green v. Gant*, 641 So. 2d 1203, 1207 (Miss. 1994)). As with motions for JNOV, we review the evidence in the light most favorable to the nonmoving party and will reverse "only when, upon review of the entire record, we are left with a firm and definite conviction that the verdict, if allowed to stand, would work a miscarriage of justice." *Id.* at 510-11 (citing *Green*, 641 So. 2d at 1207-08).

¶10.     The Lisanbys' key expert witness was Dr. Ralph Sinno, a structural engineer. Dr. Sinno testified that there was "overwhelming" evidence that wind damage had structurally destroyed the Lisanby home long before water reached the first floor. Dr. Sinno explained in his trial testimony that the first floor exterior and interior walls were much weaker than those on the second floor. It was undisputed that hurricane-force winds reached the Lisanby house far in advance of the storm surge of seawater. Dr. Sinno testified that, once these winds breached the first floor, they caused a tunneling effect throughout the house, creating suction and pressure from the inside. According to Dr. Sinno, it was this internal pressure, and not the storm surge, that first caused significant damage to the house, especially to the ground floor.

¶11.     To refute Dr. Sinno's testimony, USAA offered its own engineering expert, Dr. Doug Smith. Dr. Smith opined that storm surge destroyed the garage and cottage and caused the damage to the first floor. It was Dr. Smith's opinion that the force of the wind, alone, never

5

exceeded the design load of the first floor walls; therefore, it was his conclusion that water and not wind had caused the devastating damage.

¶12.     At trial and on appeal, the parties argued at length about the amount of water that had entered the house.  The Lisanbys claim that only two feet of water entered the home, while USAA claims that the storm surge would have resulted in water ten-and-a-half feet deep in the residential structure.  Regardless, as the plaintiffs observe in their brief, the amount of water that eventually made its way into the house is irrelevant under Dr. Sinno's theory that wind had severely damaged the house long before flood waters arrived.

¶13.     USAA relies on *Johnson v. City of Pass Christian*, 475 So. 2d 428 (Miss. 1985) and *Blossman Gas, Inc. v. Shelter Mutual General Insurance Company*, 920 So. 2d 422 (Miss. 2006), for their position that a verdict contrary to physical and photographic evidence cannot stand.  In *Johnson*, 475 So. 2d at 429, the plaintiff sued the city for damages she sustained in a one-car accident.  According to the plaintiff and other witnesses, a hole in the road caused her to lose control of the vehicle, but no hole was shown in photographs of the accident scene.  *Id.* at 431.  On appeal, this Court affirmed the trial court's grant of a JNOV in favor of the defendant, noting that "where the photographs contradict the plaintiff's tenuous theory of an accident, the plaintiff's theory will not support a jury verdict." *Id.*

¶14.     We find that *Johnson* is readily distinguishable from the case before us.  Unlike the witnesses in *Johnson*, here the plaintiffs' key expert did not dispute the photographic evidence that showed the state of the house following the storm.  Dr. Sinno did not disagree that the first floor of the house received substantially more damage than the second; rather, he testified that, in his expert opinion, wind had structurally destroyed the house before the

6

storm surge arrived. Unlike *Johnson*, photographic evidence in this case does not contradict witness testimony, and we find that the trial judge properly denied USAA's motion for a judgment notwithstanding the verdict.

¶15. *Blossman*, 920 So. 2d 422, also is distinguishable. In *Blossman*, this Court affirmed the trial judge's grant of a new trial to the plaintiff because the evidence was "overwhelmingly contrary" to the jury's verdict in favor of the defendant. *Id.* at 422-23. At issue in that case was whether the negligent placement of gas lines had caused a house fire. *Id.* at 423. The plaintiff insurance company presented uncontradicted evidence that a gas leak had caused the fire, while the defendant gas company simply maintained that the cause of the fire was unknown. *Id.* at 424-25. After the jury returned a verdict in favor of the defendant, several of the jurors hugged the defendant's counsel and its corporate representative. *Id.* at 425. The trial judge granted the plaintiff's motion for a new trial, finding that the verdict was the result of "bias, prejudice and passion." *Id.* at 426. Noting that the "totality of the evidence [was] overwhelmingly in [the plaintiff's] favor," and that "[t]his is not a case where the evidence presented at trial was in dispute and differing conclusions could be reached," we held that the trial judge did not abuse his discretion by granting a new trial for the plaintiff. *Id.* at 426 (citing *McKinzie v. Coon*, 656 So. 2d 134, 140 (Miss. 1995)).

¶16. Unlike *Blossman*, there was no evidence of blatant juror bias in the present case, and both sides offered reasoned explanations for the damage to the home. The evidence presented at trial was very much "in dispute and differing conclusions could be reached," based on this evidence. *Id.* at 426. Therefore, viewing the evidence in the light most

favorable to the plaintiffs, we cannot say that the trial judge abused his discretion in denying USAA's alternative motion for a new trial. The plaintiffs and the defendant were allowed to present their respective theories of the case fully, and the jury, under proper instructions, resolved the conflicting arguments of the parties in favor of the plaintiffs.

> **II. Because USAA had an arguable basis for denying the claim, emotional distress damages should not have been submitted to the jury, and the trial judge should not have awarded attorneys' fees and litigation expenses.**

¶17. The Lisanbys were awarded damages for emotional distress, attorneys' fees, and litigation expenses based on their claim that USAA acted in bad faith when it denied their claim. USAA argues on appeal that the Lisanbys are not entitled to recover these extracontractual damages because USAA had an arguable basis for denying the claim.

¶18. Extracontractual damages, such as awards for emotional distress and attorneys' fees, are not warranted where the insurer can demonstrate "an arguable, good-faith basis for denial of a claim." *United Amer. Ins. Co. v. Merrill*, 978 So. 2d 613, 627 (citing *State Farm Ins. Co. v. Grimes*, 722 So. 2d 637 (Miss. 1998); *Standard Life Ins. Co. v. Veal*, 354 So. 2d 239 (Miss. 1977)). This Court has said that the "plaintiff bears a heavy burden" of proving that the denial of an insurance claim was in bad faith. *Windmon v. Marshall*, 926 So. 2d 867, 872 (Miss. 2006) (citing *Blue Cross & Blue Shield v. Campbell*, 466 So. 2d 833, 844 (Miss. 1984)). Moreover,

> The plaintiff's burden in proving a claim for bad faith refusal goes beyond proving mere negligence in performing the investigation. The level of negligence in conducting the investigation must be such that a proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit.

*Id.* (quoting *Liberty Mut. Ins. Co. v. McKneely*, 862 So. 2d 530, 534 (Miss. 2003)).

8

¶19. On appeal, the plaintiffs cite numerous instances of conduct that they contend support a finding that USAA acted in bad faith. However, most of these allegations are not supported by the record, and USAA persuasively disputes all of them without response from the plaintiffs.

¶20. For example, the plaintiffs claim that USAA concluded on August 29, 2005, that the damage was caused by flood. The record simply does not support this assertion. Based on a phone call from Admiral Lisanby to USAA shortly after the storm, the USAA representative opened *both* a homeowners' insurance claim and a flood insurance claim for the Lisanby property.[1] There is no indication that USAA attributed most of the loss to storm surge until after it had completed an investigation.

¶21. The plaintiffs also allege that Gary Taylor, USAA's adjuster, prepared his wind damage estimate before receiving a report from their engineer. The Lisanbys cite testimony from Taylor that he did *not* prepare his estimate until the day he received the report. Nothing in the record indicates that Taylor had prejudged the claim.

¶22. The plaintiffs further criticized USAA, arguing that, even before its engineering report was completed, it had "certified to the Federal Government that the cause of the damage to

---

[1] The parties dispute when this telephone call was made and exactly what information Admiral Lisanby relayed to USAA during this call. According to the USAA representative, the admiral called from his mobile telephone on August 29, 2005, and said that the roof was gone, all of the contents of the house were damaged, and the first floor was under six feet of water. Although telephone records demonstrated that a call was received on August 29, 2005, from the admiral's mobile telephone, the admiral testified that he did not speak to a claims representative until the next morning, on August 30. He also denied telling the USAA claims representative that the roof had been blown off or that there was six feet of water in his home.

the Lisanbys' home was flood." This is a mischaracterization of the evidence; a flood claim was made by the Lisanbys, and they have never disputed that they were entitled to flood damages.

¶23. The plaintiffs also argued that USAA invented an "imaginary five-foot water line" and "demanded" that Mrs. Lisanby create a list of personal property damaged above and below this line. Yet, the Lisanbys readily admitted at trial that the admiral was the source of the five-foot water line.

¶24. In sum, the record supports USAA's claim that it had "an arguable basis" for denying the claim. Although the jury ultimately decided that it was wind, and not water, that initially caused the destruction, the evidence does not establish that USAA acted in bad faith in denying the majority of the homeowners' claim. Because USAA had an arguable basis for its denial, the defendants are entitled to judgment as a matter of law on the issues of emotional distress damages, attorneys' fees, and litigation expenses. *Merrill*, 978 So. 2d at 627.

### III. The trial judge did not abuse his discretion in allowing evidence of replacement costs.

¶25. "The standard of review regarding admission or exclusion of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." *Whitten v. Cox*, 799 So. 2d 1, 13 (Miss. 2000) (quoting *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (Miss. 1999)).

10

¶26. The parties stipulated to the amount of replacement costs as follows: $1,577,324 for the dwelling, $45,643 for the garage, and $88,746 for the cottage. Although USAA stipulated to these amounts, it argued that this evidence was erroneously admitted because, under the subject homeowners' policy, the Lisanbys were not entitled to recover replacement costs. The policy provides that in the absence of replacement, the insured was entitled to the actual cash value of the damaged or destroyed property. The plaintiffs do not take issue with the policy language. Instead, they argue that evidence of replacement costs was necessary to a determination of actual cash value.

¶27. USAA admits that replacement costs are relevant to determining actual cash value, but argues that it was prejudiced because "plaintiffs were not required by the trial court to restrict their evidence to actual cash value of the loss." USAA fails to point to any evidence in the record that the verdict was based on replacement costs alone, and the evidence adduced at trial included an actual cash value of $1.6 million. Therefore, we do not find that the trial judge abused his discretion in admitting evidence of replacement costs.

**IV. The trial judge did not abuse his discretion by denying USAA's motion for a change of venue.**

¶28. USAA argues that the trial court erred by denying its motion for a change of venue because it contended that it could not receive a fair trial in Jackson County due to community bias. The Mississippi Constitution guarantees that "the right of trial by jury shall remain inviolate." Miss. Const. art. 3, § 31. In addition, the guarantee of due process of law contemplates a verdict rendered by a fair and impartial jury. *Hudson v. Taleff*, 546 So. 2d 359, 363 (Miss. 1989) (citing Miss. Const. art. 3, § 14). Thus, trial courts have a duty to

11

assure that an impaneled jury is "competent, fair and impartial." *Id.* (citing *Marshall Durbin, Inc. v. Tew*, 381 So. 2d 152, 154 (Miss. 1980); *Miss. Power Co. v. Stribling*, 191 Miss. 832, 3 So. 2d 807, 810 (1941)).

¶29. Mississippi Code Section 11-11-51 provides the mechanism whereby a party may seek to change venue if that party believes that because of "the undue influence of the adverse party, prejudice existing in the public mind, or for some other sufficient cause to be stated in the petition, he cannot obtain a fair and impartial trial in the county where the action is pending." However, the decision to grant or deny a motion for a change of venue will not be disturbed on appeal absent an abuse of discretion. *Bayer Corp. v. Reed*, 932 So. 2d 786, 788 (Miss. 2006) (citing *Beech v. Leaf River Forest Prods., Inc.*, 691 So. 2d 446, 448 (Miss. 1997)).

¶30. Months before trial, USAA filed a motion for a change of venue, arguing that it could not receive a fair trial in any of the Mississippi Gulf Coast counties because: (1) the majority of potential jurors were adversely affected by Hurricane Katrina; (2) there had been widespread negative publicity about insurance companies in general; (3) prominent coastal residents had filed suit against their homeowners' insurance companies; and (4) there was potential for witness and juror intimidation.

¶31. In support of its motion, USAA attached documentation showing that 64% of the houses in Jackson County had sustained some type of damage from Hurricane Katrina. Also attached were four political cartoons that were critical of insurance companies' handling of Katrina claims, but without any indication of whether or when these cartoons were published. Another exhibit was of an attorney advertisement soliciting clients who had potential claims

12

against their homeowners' insurance; the record does not indicate where this advertisement was published or how many times it may have circulated.

¶32.   USAA provided twenty news reports regarding Hurricane Katrina and homeowners' insurance, but did not provide circulation or viewer numbers for the news outlets.[2]  Only two of the articles specifically referred to USAA.  One of them mentioned that Mississippi Attorney General Jim Hood was suing a number of insurance companies, including USAA; the other article mentioned that USAA was one of several insurance companies being sued by former-attorney Richard Scruggs.

¶33.   Also attached to the motion were two complaints filed against State Farm in the United States District Court for the Southern District of Mississippi.  One of the complaints was filed by United States Senator Trent Lott, and the other was filed by United States Representative Gene Taylor, in connection with their respective losses from Hurricane Katrina.

¶34.   USAA also provided four photographs of homemade signs allegedly created and posted on Gulf Coast properties by disgruntled homeowners.  Two of the signs criticized State Farm Insurance, one took aim at Farm Bureau Insurance, and the other read "Think Katrina was 'Ruthless'? Wait Til U Meet Your Ins. Adjuster."

¶35.   Finally, USAA attached an affidavit from Dr. Craig New, a psychologist from Oregon described as a venue expert.  Dr. New had hired an independent company to conduct a

---

[2]Five reports came from television station WLOX, twelve from the South Mississippi *Sun Herald* newspaper, one from the Jackson *Clarion-Ledger* newspaper, one from the Hattiesburg *American* newspaper, and one from a magazine entitled *Mid-South Super Lawyers*.

telephone survey of potential jurors in Jackson County and eleven other counties.[3] Based on the responses given, Dr. New opined that USAA could not receive a fair trial in Jackson County.

¶36. The plaintiffs responded that the majority of the media attention was directed at State Farm, not USAA, and that no article mentioned the Lisanbys' case specifically. The plaintiffs also cited a Fifth Circuit Court of Appeals opinion upholding the decision of a federal district court for the Southern District of Mississippi which had denied State Farm's motion for a change of venue in a very similar, Katrina-related case. ***Broussard v. State Farm Fire and Cas. Co.***, 523 F. 3d 618, 631-32 (5th Cir. 2008). The plaintiffs also noted that USAA recently had tried another Katrina case to verdict in the same district court and had not requested a change of venue.

¶37. The plaintiffs also attached to their response an affidavit from Dr. W. Martin Wiseman, the director of the John C. Stennis Institute of Government at Mississippi State University. Dr. Wiseman questioned Dr. New's methodology and opined that there was as great a risk of juror bias in the central and northern counties of Mississippi as in the Gulf Coast counties. Dr. Wiseman also expressed his opinion that voir dire would be "sufficient to insure that qualified, unbiased jurors are chosen to serve on this case."

¶38. The trial judge held a hearing on the motion and heard testimony from USAA's venue expert, Dr. New. The trial judge denied the request for a change of venue, reasoning that

---

[3]The interviewees were from Jackson, Hancock, Harrison, Pearl River, Stone, George, Calhoun, Lafayette, Marshall, Pontotoc, Union, and Yalobusha Counties.

voir dire examination would be an adequate means to ensure that an impartial jury was impaneled.

¶39.    USAA renewed its motion after the lengthy voir dire, citing its pretrial motion and a recent article in the *Sun Herald* newspaper reporting on the Lisanbys' case.  Seven of the seventy-nine veniremen indicated that they had heard about the case or had read the *Sun Herald* article.  Only one of the seven served on the jury, and that juror swore during voir dire that his prior knowledge would have no effect on his ability to render a verdict.  The trial judge again denied USAA's motion, noting that voir dire had confirmed his prior ruling that an impartial jury could be impaneled in Jackson County.  The judge then struck three prospective jurors *sua sponte*, one of whom had expressed a religious aversion to jury duty, and two of whom had indicated that their personal experiences following Hurricane Katrina had rendered them biased against USAA.  All twelve of the jurors that USAA challenged for cause were struck, three over the objection of the plaintiffs.  In all, fourteen of the seventy-nine jurors, or approximately eighteen percent, were struck because the trial judge found them to be biased.

¶40.    USAA raised the issue again in its posttrial motion for a new trial.  The defendant cited articles about the case by the *Sun Herald* newspaper that had been published during trial and that USAA claimed were favorable to the plaintiffs.  USAA also offered an affidavit from one of its attorneys who claimed that, during USAA's closing arguments, an audience member "loudly express[ed] negative comments" about the insurance company.  USAA also offered an affidavit from Dr. Allen R. McConnell, a professor of psychology at Miami University.  Dr. McConnell opined that, based on Dr. New's pretrial study, the evidence

15

attached to USAA's motion for a change of venue, and the trial transcripts, "it seems virtually impossible to eliminate the biases . . . if jurors are chosen from residents of Jackson County." Finally, USAA argued that the admiral's prominence in the community, and his testimony that he was largely responsible for bringing the Northrup Grumman shipyard to Pascagoula, improperly influenced the jury's verdict.

¶41.    USAA cites *Beech*, 691 So. 2d at 450, to support its argument that the pervasiveness of the pretrial publicity and the large number of similar claims in Jackson County rendered voir dire ineffective at detecting juror bias. *Beech* involved one of many lawsuits against companies that allegedly had dumped pollutants into local rivers, causing the fish in those streams to be contaminated with dioxin. *Id* at 447. On appeal, the plaintiffs had challenged the trial court's decision to transfer venue out of George County. In affirming the transfer of venue, we rejected the plaintiffs' claims that the trial court should have conducted voir dire before issuing its ruling instead of relying solely on the defendants' petition. *Id.* at 450. We found it noteworthy that 750 of the 8,909 residents of George County eligible for jury duty were plaintiffs in dioxin cases against the same defendants, and even more were potential plaintiffs in a case against the same defendants in neighboring Jackson County. *Id.* In addition, the defendants had provided the trial court more than 300 news articles printed in local newspapers in the years leading up to trial. *Id.* The Court also noted that alternatives to a change of venue, such as an increase in the size of the venire or additional peremptory challenges, would not have made much of a difference in a county as small in population as George County. *Id.* (citing *Hudson*, 546 So. 2d at 363).

16

¶42.    We find that the present case is more akin to ***Bayer v. Reed***, 932 So. 2d 786 (Miss. 2006).  In ***Reed***, the plaintiff sued the maker of the prescription drug Baycol, seeking to recover for damages that she allegedly had suffered from taking the drug.  ***Id.*** at 788.  On interlocutory appeal, this Court affirmed the trial court's refusal to transfer venue out of Holmes County despite extensive pretrial publicity and a large number of similar cases also filed in Holmes County.  ***Id.*** at 790-91.  We noted that "Bayer has presented extensive evidence that there was pre-trial publicity regarding prescription medication in general; however, no evidence has been presented to link the publicity specifically with Bayer, Baycol or this particular lawsuit."  ***Id.*** at 790.

¶43.    Likewise, with the exception of one article published just before trial, USAA did not present to the trial court any pretrial news coverage specific to the Lisanbys' case.  Out of the twenty articles attached to its motion for a change of venue, only two mentioned USAA, and most of the articles focused on State Farm.  Moreover, the number of articles presented in this case pales in comparison to the nearly 300 articles that were presented to the trial court in ***Beech***.  As for the number of similar claims in Jackson County, USAA provided no such statistics, and none of the veniremen had filed a lawsuit against his or her homeowners' insurance carrier.

¶44.    USAA also cites ***King v. Kelly***, 234 Miss. 160, 137 So. 2d 808, 813 (1962), to support its argument that juror bias was so prevalent that it warranted a new trial.  However, in ***King***, sixty-eight percent of the venire had fixed opinions about the case.  In the present case, only eighteen percent of the venire expressed preconceived bias against the insurance company.  *See also* ***Hudson***, 546 So. 2d at 363 (reversal warranted where forty-eight percent of

17

veniremen had connection with defendant); *Seals v. State*, 208 Miss. 236, 44 So. 2d 61, 68 (1950) (reversal warranted where sixty-five percent of veniremen believed the defendant was guilty). We do not find the same sort of statistical lopsidedness in the case before us.

¶45. As for the opinions of USAA's venue experts, the trial judge did not abuse his discretion in rejecting their findings. The judge heard live testimony from Dr. New, but apparently was more persuaded by Dr. Wiseman's contrary conclusion that an impartial jury could be obtained through the voir dire process. Indeed, Dr. New's study supports Dr. Wiseman's conclusion that juror bias against insurance companies would be just as prevalent in the northern counties; the responses to many of the questions posed by Dr. New often did not differ significantly among residents of the several Mississippi counties he had studied. As Dr. McConnell's opinions were largely based on Dr. New's findings, the trial judge did not abuse his discretion in rejecting them as a basis for a new trial.

¶46. Regarding USAA's claim that Admiral Lisanby's prominence in the community somehow influenced the jury against the insurance company, only one potential juror indicated that he knew who the admiral was, and that venire member was struck for other reasons. In addition, defense counsel asked the venire during voir dire, "does the fact that [Admiral Lisanby], in some way, worked with or promoted, helped, assisted the shipyard, does that mean in any way to you whatsoever, I need to do something for the Admiral, I need to take care of them, I need to give them a little extra edge?" The record does not indicate that any of the venire members responded affirmatively, and the defendant did not move to strike any of them for cause on the basis of this inquiry. USAA did not ask the potential

18

jurors about any other lawsuits filed by other prominent Gulf Coast citizens, such as Senator Lott or Representative Taylor.

¶47.    Finally, USAA knew well in advance of trial that its motion for a change of venue had been denied; yet the record does not indicate that the defendant took any significant steps to ferret out its perceived juror bias beyond its extensive voir dire examination of the venire. USAA did not request pretrial juror questionnaires, through which it might have posed the same questions to the venire that Dr. New had asked in his survey. Neither did USAA ask for additional peremptory challenges or for an increase in the size of the venire. *See **Hudson***, 546 So. 2d at 363. Moreover, individual, sequestered voir dire examination was not requested by the defendant.

¶48.    Based on the record before us, we cannot say that the trial judge abused his discretion in declining to transfer venue out of Jackson County. The pretrial publicity was not specific to the Lisanbys' case, and only two of the twenty articles offered by USAA even mentioned the defendant by name. The record provides no indication that the trial court was unduly restrictive in the scope or the length of time allowed for voir dire, and the defendant makes no complaint in this regard. Furthermore, the trial judge struck all fourteen jurors who indicated that they might be biased against USAA. We find that the trial judge was correct in ruling that voir dire examination was an effective method of impaneling a fair and impartial jury.

**V. A mistrial was not warranted.**

¶49.    USAA argues that the trial judge should have granted a mistrial based on plaintiffs' counsel's "send a message" argument and based on the same attorney's interview with local

19

media. Our standard of review regarding the decision to grant or deny a motion for a mistrial is abuse of discretion. ***Coho Resources, Inc. v. McCarthy***, 829 So. 2d 1, 18 (Miss. 2002). In addition, "the trial judge is in the best position for determining the prejudicial effect of an objectionable remark." ***Id.*** Absent "serious and irreparable damage . . . the trial judge should admonish the jury then and there to disregard the impropriety." ***Id.*** (quoting ***Roundtree v. State***, 568 So. 2d 1173, 1177-78 (Miss. 1990)).

¶50.    USAA cites the following portion of the plaintiffs' closing arguments to demonstrate its view that the attorney improperly asked the jury to "send a message" to the defendant.

> Plaintiffs' Counsel: You know, sometimes we feel so powerless. There's such an unequal situation between the little policyholder and the big insurance company. The insurance company –
>
> Defense Counsel: Improper argument, Your Honor.
>
> The Court: I think so.
>
> . . . .
>
> Plaintiffs' Counsel: The insurance company has the exclusive control, dominion and power over the evaluation, processing and denying of a claim, and the people have no voice. But not today. In this one shining moment in our American system, the people can speak and respond in justice. Today, you are the voice of the people.
>
> Defense Counsel: Your Honor, that's totally improper argument.
>
> Plaintiffs' Counsel: It is not improper.
>
> The Court: I'm going to overrule your objection. Let him get through.
>
> Plaintiffs' Counsel: Today, you are the voice of the people. Speak. Speak quickly and speak clearly. If you do today, the people of Jackson County will be heard.
>
> Defense Counsel: May we approach, Your Honor.

20

The trial judge then held an off-the-record bench conference, at the conclusion of which he instructed the jury to "disregard that last statement made by [plaintiffs' counsel]. Do not consider that in your deliberations." USAA moved for a mistrial, which the trial court denied, reasoning that the jury would follow his instruction to disregard the statements.

¶51. On appeal, USAA likens these comments of counsel to those made in *Janssen Pharmaceutica, Inc. v. Bailey*, 878 So. 2d 31 (Miss. 2004). In *Bailey*, the plaintiffs sued the manufacturers of the prescription drug Propulsid. *Id.* at 35. After the defense rested, the trial court granted a directed verdict in favor of the defendants on the plaintiffs' negligent misrepresentation claims. *Id.* at 61. Although the only issue remaining before the jury was the inadequate warning claim, the plaintiffs' attorney "continuously argued throughout closing arguments that the campaign [the defendant] developed to promote Propulsid was false and misleading." *Id.* at 62. In addition to the "countless references" to negligent misrepresentation, the plaintiffs' attorney also "suggested that the jury should 'send a message' to [the defendants] by basing the amount of damages solely on [their] finances." *Id.* This Court found that "[p]laintiffs' counsel was making a punitive damages argument for intentional fraud when the only issue before the jury was a compensatory damages claim for negligent failure to warn." *Id.* This Court concluded that these continued "appeals to passion and prejudice" warranted reversal. *Id.* (quoting *Shell Oil Co. v. Pou*, 204 So. 2d 155, 157 (Miss. 1967)).

¶52. We do not find that the arguments in the present case rise to the level of those condemned in Bailey. The trial judge sustained USAA's objection and properly instructed the jury to disregard the objectionable statements. We cannot say that the judge abused his

21

discretion by refusing to grant a mistrial. The trial judge promptly and unequivocally instructed the jurors not to consider the remarks in question, and they are presumed to have done so. *Parker v. Jones County Cmty. Hosp.*, 549 So. 2d 443, 446 (Miss. 1989) (citations omitted).

¶53. USAA also argues that a mistrial was warranted because one of the plaintiffs' attorneys conducted an interview with a local television station in front of the courthouse and in view of the jurors as they were recessing between deliberations. When it was brought to the judge's attention the following day, the judge individually polled the jurors about the interview. Every juror but one admitted having seen the interview in progress, but none of the jurors heard what was being said. The trial judge noted that he had viewed the interview and declined to grant the defendant's motion for a mistrial.

¶54. USAA cites Mississippi Rule of Professional Conduct 3.6(a), which prohibits attorneys' making "extrajudicial statement(s) that a reasonable person would expect to be disseminated . . . [and] will have a substantial likelihood of materially prejudicing an adjudicative proceeding." The only statement to which USAA points is the plaintiffs' attorney's assertion to the reporter that the Lisanbys "should win." We fail to see how such a statement, even if overheard by the jurors, would have had "a substantial likelihood of materially prejudicing" the verdict. Miss. R. Prof. Cond. 3.6(a). Therefore, the trial judge did not abuse his discretion by refusing to grant a mistrial based on the comments given by the plaintiffs' attorney to the reporter.

**VI. Absent bad faith, punitive damages are not warranted.**

¶55. On cross-appeal, the plaintiffs argue that the trial judge erred by refusing to hold an evidentiary hearing before denying their request to move to a punitive damages phase of the trial. As discussed in Issue II above, the plaintiffs failed to demonstrate bad faith on the part of the defendant. Because bad-faith denial of their claim was the only basis the plaintiffs asserted to support punitive damages, this issue is moot.

**Conclusion**

¶56. For the foregoing reasons, we affirm the judgment in favor of the Lisanbys on their breach-of-contract claim. However, because the plaintiffs failed to demonstrate that the defendant acted in bad faith when it denied their claim, we reverse and render judgment in favor of the defendant regarding the award of extracontractual damages for the infliction of emotional distress, attorneys' fees, and litigation expenses.

¶57. **ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND RENDERED IN PART. ON CROSS APPEAL: AFFIRMED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., DICKINSON, LAMAR AND CHANDLER, JJ., CONCUR. RANDOLPH, J., CONCURS IN RESULT ONLY. PIERCE J., NOT PARTICIPATING.**