# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CA-02003-COA

**MAGGIE MELVIN, ADMINISTRATRIX OF THE ESTATE OF JIMMY LEE MELVIN**                    **APPELLANT**

**v.**

**CLEVELAND NURSING AND REHABILITATION LLC**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/04/2013 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LEVI BOONE |
| ATTORNEYS FOR APPELLEE: | BRADLEY WITHERSPOON SMITH |
| | GEORGE CLANTON GUNN IV |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| TRIAL COURT DISPOSITION: | FOUND IN FAVOR OF DEFENDANT/APPELLEE |
| DISPOSITION: | AFFIRMED – 03/17/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., ROBERTS AND MAXWELL, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     Maggie Melvin appeals a judgment of the Bolivar County Circuit Court entered pursuant to a jury verdict that found Cleveland Nursing and Rehabilitation Center LLC (CNRC) not liable for the death of her husband, Jimmy Melvin, who was a resident of CNRC before his death.  In this appeal, Maggie asserts that the circuit court committed reversible error by giving a jury instruction that constituted a misstatement of law, was unfairly prejudicial, and confused the jury.

¶2.     Finding no error, we affirm.

FACTS

¶3.     Jimmy resided at CNRC from on or about August 28, 2008, until on or about October 4, 2008, when he was admitted to the Bolivar Medical Center (BMC).  At BMC, Jimmy was treated for a Stage III sacral decubitus ulcer.  He later died, and Maggie sued CNRC, "alleging that the . . . ulcer was proximately caused by CNRC's failure to properly turn [Jimmy] and its failure to properly apply preventive ointment."[1]

¶4.     During trial, CNRC submitted Jury Instruction D-22, which reads as follows:

> The Court instructs the jury that *nursing homes are not guarantors of the success of any care provided to a resident of a nursing home.*  Unless the nursing home breached the standard of care, a nursing home is not liable for the occurrence of an undesirable result to a resident at the nursing home.  A nursing home is only required to provide a resident with that degree of care, skill[,] and diligence which would be practiced in the same or similar circumstances by a minimally competent and reasonably prudent nursing home.

> Therefore, unless the Plaintiff has proved by a preponderance of the evidence that Defendant breached this standard, you must return a verdict in favor of the Defendant.

(Emphasis added).  Maggie objected to this instruction, arguing that "it raise[d] the burden of proof [by forcing her] to prove guarantor."  The circuit court overruled the objection and gave the instruction.

¶5.     The circuit court also gave Jury Instruction D-17, which reads:

---

[1] A copy of the complaint has not been provided on appeal.  This information was extracted from Maggie's appellate brief.

2

In order to prevail in this action, the Plaintiff must establish by a preponderance of the evidence and by expert testimony all of the following four elements:

1.    The standard of acceptable nursing home care;

2.    Cleveland Nursing and Rehabilitation Center deviated from that standard when providing care and treatment to Jimmy Lee Melvin;

3.    Jimmy Lee Melvin suffered damages; and

4.    Cleveland Nursing and Rehabilitation Center's deviation from the applicable standard of care was the proximate cause of Jimmy Lee Melvin's damages.

Expert testimony is required to establish each of these elements. If the Plaintiff establishes each of these elements with expert testimony by a preponderance of the evidence, then your verdict shall be for the Plaintiff.

However, if you believe the Plaintiff has failed to show any one of the above elements by a preponderance of the evidence in this case, then your verdict shall be for the Defendant.

As stated, after consideration of the evidence and the jury instructions, including Instructions D-17 and D-22, the jury found in favor of CNRC, leading to this appeal.

DISCUSSION

¶6.    On appeal, Maggie argues that Instruction D-22 is a misstatement of law because it "primarily deal[s] with medical procedures [performed by physicians and surgeons] and not the kind of care related to the treatment [provided] at nursing homes." Maggie also argues that the instruction was unfairly prejudicial, and that it confused the jury, because it led the jury to believe that "nursing homes are immune to any and all negligent acts or omissions causing injury to residents." Maggie further argues that Instruction D-22 modified the

3

elements that she had to establish at trial. More specifically, she argues that she was required to prove that CNRC was a guarantor of care in addition to proving that CNRC's breach of the applicable standard of care was the proximate cause of Jimmy's death.

¶7. In response, CNRC argues that the jury was properly instructed on the elements that Maggie had to establish. CNRC also argues that Instruction D-22 is not a misstatement of law because the burden of proof in this case is the exact same burden of proof that plaintiffs are required to meet in medical-malpractice cases against physicians. CNRC further argues that similar instructions "ha[ve] been used and approved in medical negligence cases involving allegedly negligent physicians for over twenty years."

¶8. "Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion." *Watkins v. State*, 101 So. 3d 628, 635 (¶22) (Miss. 2012) (quoting *Bailey v. State*, 78 So. 3d 308, 315 (¶20) (Miss. 2012)). In *Utz v. Running & Rolling Trucking Inc.*, 32 So. 3d 450, 474 (¶78) (Miss. 2010) (internal citations and quotations omitted), the Mississippi Supreme Court stated:

> The general rule with regard to jury instructions is that the trial court has considerable discretion when instructing the jury, and the instructions are to be read as a whole. A litigant is entitled to have jury instructions that present his theory of the case. However, a trial judge may refuse a proposed jury instruction that is an incorrect statement of the law, repeats a theory covered in other instructions, or has no proper foundation in the evidence before the court. On appeal, the appellate courts analyze whether a jury instruction correctly stated the law and was supported by the evidence. Nonetheless, if other instructions granted adequately instruct the jury, a party may not complain of a refused instruction on appeal. When analyzing jury instructions as a whole, defects in specific instructions will not mandate reversal when all of the instructions, taken as a whole fairly—although not perfectly—announce the applicable primary rules of law.

¶9. Maggie's argument that Instruction D-22 can only apply to medical procedures performed, or care given, by physicians and surgeons is without merit. In making this argument, Maggie implies that CNRC should not be treated as a medical provider because either: (1) CNRC is a corporate being; or (2) the treatment provided at CNRC is not as serious or invasive as the treatment provided by physicians and surgeons at hospitals. Maggie agrees that Instruction D-22 applies to medical providers, such as physicians and surgeons, while overlooking the fact that, in this case, CNRC could only act through its medical providers.

¶10. Maggie compares this case to *Day v. Morrison*, 657 So. 2d 808 (Miss. 1995). In *Morrison*, a former patient and his wife sued a physician for damages arising from complications of surgery performed on the patient by the physician. *Id*. at 809. During trial, the trial court gave two jury instructions—both of which stated that "a competent physician is not liable per se for a mere error of judgment[.]" *Id*. at 811. The jury found in favor of the physician, and the patient appealed, challenging the two jury instructions. *Id*. On appeal, the Mississippi Supreme Court found that

> the two instructions, when read together, tell the jury that even though a doctor may be negligent, that he may not have treated a patient according to the minimally accepted standards, or that he was mistaken, then this is acceptable, and the jury is to find for the Defendant doctor. . . . [The] phrases "a competent physician is not liable per se for a mere error of judgment" and "good faith error in judgment or honest error in judgment" instructions should not be given in medical negligence cases because of their potential for confusing the jury. Negligence that results in injury should support a finding of liability by a jury regardless of whether the act or omission giving rise to the injury was caused by an "honest error in judgment."

5

*Id.* at 815.

¶11. Maggie argues that, like the instructions in *Morrison*, the "guarantor" language in Instruction D-22 precluded liability on behalf of CNRC. However, the instructions in *Morrison* are dissimilar to the instruction here, as Instruction D-22 in no way suggests that CNRC would escape liability for a mere error in judgment if it acted in good faith, despite having failed to render care in accordance with the requisite standard of care.

¶12. There is also no merit to Maggie's argument that the "guarantor" language in Instruction D-22 precluded CNRC's liability in this case. To say that CNRC was not a guarantor of care is not to say that CNRC was not required to provide Jimmy with care that met the applicable standard of care. Instruction D-22, in conjunction with Instruction D-17, merely informed the jury that CNRC could not guarantee the success of the care given to Jimmy even if that care met the requisite standard of care. Additionally, Instruction D-22 inversely instructed the jury to find CNRC liable if it found that CNRC "had breached the standard of care."

¶13. Maggie's overarching argument seems to be that the jury had to have been confused because, after weighing the evidence, it did not find that CNRC had breached the standard of care in this case. However, "[i]t is the jury's job to weigh the credibility of the evidence before it, and to decide which parts of conflicting testimony it will believe." *Ortman v. Cain*, 811 So. 2d 457, 463 (¶23) (Miss. Ct. App. 2002) (citation omitted). The jury was entitled

6

to return a verdict in favor of CNRC as long as the evidence supported the verdict.[2]

¶14.    Maggie's final argument is that Instruction D-22 added to the elements that she was required to establish during trial.  However, it is clear that Instruction D-17 properly instructed the jury on the elements that Maggie had to establish, and Maggie does not complain that Instruction D-17 is an improper statement of the law.  This issue is without merit.  Accordingly, we affirm.

¶15.    **THE JUDGMENT OF THE BOLIVAR COUNTY CIRCUIT COURT IS AFFIRMED.    ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR.    JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION.**

---

[2] The record does not show that Maggie challenged the weight or the sufficiency of the evidence presented at trial.