# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00372-COA

THE ESTATE OF SYLVIA F. MINOR AND
PAUL S. MINOR                                               APPELLANTS

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION                                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/20/2013 |
| TRIAL JUDGE: | HON. RICHARD TODD BENNETT |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | F. GERALD MAPLES |
| | W. CORBAN GUNN |
| | CHUCK R. MCRAE |
| | SETH C. LITTLE |
| ATTORNEYS FOR APPELLEE: | CHARLES G. COPELAND |
| | WALKER REECE GIBSON |
| | REBECCA SUZANNE BLUNDEN |
| | TIMOTHY JOHN STERLING |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| TRIAL COURT DISPOSITION: | JURY VERDICT OF $1,547,293.37 IN FAVOR OF APPELLANTS; PARTIAL SUMMARY JUDGMENT GRANTED IN FAVOR OF APPELLEE ON ISSUES OF PUNITIVE AND EXTRACONTRACTUAL DAMAGES |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART: 06/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

EN BANC.

GRIFFIS, P.J., FOR THE COURT:

¶1.    Paul and Sylvia Minor's home was destroyed by Hurricane Katrina on August 29,

2005.  The Minors had a homeowner's insurance policy with United Services Automobile

Association (USAA). The policy provided coverage limits for: house – $1,028,000; boathouse and shed – $102,800; guest cottage – $108,000; detached carport – $41,000; personal property – $771,000; and jewelry, watches, furs, and silverware – $4,000. The policy also included a two-percent named-storm deductible and covered damage caused by wind but excluded damage caused by storm surge or flood.

¶2. The Minors reported their loss to USAA in January 2006. USAA assigned adjusters to inspect the property and hired an independent engineering firm to inspect the structure to determine the extent of damage as a result of Hurricane Katrina's storm surge or winds. USAA issued payments for the damage that it concluded was caused by wind and did not pay for damage it determined was caused by storm surge or flood.

¶3. The Minors were not satisfied with USAA's payments and claimed that they suffered a total loss caused by wind. The Minors demanded USAA pay the policy limits.

¶4. On August 14, 2008, the Minors filed a complaint in the Circuit Court of Jackson County. The complaint asked for "monetary damages for all losses incurred," and punitive and extracontractual damages due to USAA's bad-faith refusal to pay their claim for benefits under the homeowner's policy.

¶5. On August 9, 2013, USAA served a motion for partial summary judgment as to the Minors' claims for punitive and extracontractual damages. The circuit court agreed and granted the motion.

¶6. The case then went to trial on all other claims. A jury returned a verdict, on September 20, 2013, in the amount of $1,547,293.37. After the posttrial motions were

2

denied, the Minors filed this appeal.

## ANALYSIS

I. *Whether the circuit court erred by granting the motion for partial summary judgment on the issue of punitive and extracontractual damages.*

A. *Standard of Review*

¶7. In *Karpinsky v. American National Insurance Co.*, 109 So. 3d 84, 88-89 (¶¶9-11) (Miss. 2013), the Mississippi Supreme Court ruled:

I. Standard of Review

We review the grant or denial of a motion for summary judgment de novo, viewing the evidence in the light most favorable to the party against whom the motion has been made.

II. The Summary Judgment Standard

Summary judgment is appropriate and shall be rendered if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Importantly, the party opposing summary judgment may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, will be entered against him.

This Court has explained that in a summary judgment hearing, the burden of producing evidence in support of, or in opposition to, the motion is a function of Mississippi rules regarding the burden of proof at trial on the issues in question. The movant bears the burden of persuading the trial judge that: (1) no genuine issue of material fact exists, and (2) on the basis of the facts established, he is entitled to judgment as a matter of law. The movant bears the burden of production if, at trial, he would bear the burden of proof on the issue raised. In other words, the movant only bears the burden of production where [he] would bear the burden of proof at trial. Furthermore, summary

3

judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial.

(Internal citations and quotations omitted).

### B. USAA's Motion for Partial Summary Judgment

¶8. USAA served the motion for partial summary judgment on the deadline to file motions set in the scheduling order. The motion was scheduled for hearing and was rescheduled several times. The circuit court heard argument on the motion on September 9 and entered an order granting the motion on September 10, the same day that voir dire began. Opening statements began on September 11. At the conclusion of the trial, the Minors asked the court to reconsider its earlier ruling on the motion for partial summary judgment, and the court declined.

¶9. USAA's motion raised three issues:

1. USAA has had legitimate and arguable reasons for handling the Minors' claims as it has.

2. USAA never acted with malice, gross negligence or reckless disregard for the Minors' rights.

3. As a matter of law, the Minors cannot recover extra-contractual damages because they cannot prove that USAA did not have an arguable basis for its actions.

¶10. The Minors' punitive damage claim was for USAA's alleged bad-faith failure to pay their claim or its delay in payment. To prevail, the Minors had to prove that USAA did not have a legitimate and arguable reason for how it adjusted and paid the Minors' claims. According to USAA, the supreme court has defined an "arguable reason" as follows:

4

An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts.

*Blue Cross & Blue Shield, Inc. v. Campbell*, 466 So. 2d 833, 851 (Miss. 1984). The Court has further held:

We are of the opinion that the term "legitimate or arguable reason," although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*State Farm Fire & Cas. Co. v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985).

¶11. USAA argued that there was no genuine issue as to a material fact in dispute and that it was entitled to a judgment as a matter of law. M.R.C.P. 56(c). This required that the circuit court and now this Court use the summary-judgment standard to review whether USAA conducted a timely investigation into the losses, the loss mechanisms, and the Minors' claims that arose therefrom.

¶12. The Minors' property was significantly damaged. The Minors did not have flood insurance, but did have a standard homeowner's policy. It contained a water-damage exclusion that excluded claims caused by "flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind." "Storm surge" was contained within the "water damage" exclusion. *Corban v. United Servs. Auto. Ass'n.*, 20 So. 3d 601, 611 (¶26) (Miss. 2009) (holding that "storm surge" is contained

5

unambiguously within the "water damage" exclusion of a USAA policy, and no other "logical interpretation" exists). During its investigation and adjustment, USAA sought to pay the amounts that it determined were owed under the policy for wind-related damage and not pay for damage caused by storm surge.

¶13.    USAA explained how it handled the Minors' claims. USAA began its investigation after the Minors reported the claim. The initial investigation included, but was not limited to: a site inspection by a USAA adjuster; discussions with the Minors, including a request for an inventory of contents; and an inspection, investigation, and preparation of a report on the loss mechanisms by PT&C, an independent professional engineering firm. USAA specifically requested that PT&C take the following action:

    a.      inspect the structure and . . . determine the extent of the damage as a result of Hurricane Katrina's storm surge and/or winds, and

    b.      determine the feasibility of repair to the structure as well as the integrity of the structures and foundations at the time of PT&C's inspection.

After inspection, PT&C prepared an assessment that concluded:

    a.      the insured property experienced wind-related damage to the shingles; canopies and/or overhangs; trim material; window systems; and soffit and fascia material around the eaves of the structure as a result of winds, with estimated speeds above 110 miles per hour; and

    b.      the remainder of the structure was destroyed by the estimated ten (10) foot storm surge.

¶14.    As a result of its investigation and the PT&C report, USAA adjusted the dwelling/other structures claim and issued a $37,245.86 check to the Minors (which included $2,000 for additional living expenses).  USAA did not submit a payment for the Minors'

contents claim because it claimed the Minors had not yet submitted an inventory.

¶15.   USAA also argues that it repeatedly asked the Minors to provide more information so USAA could further adjust the claim.  After several requests, USAA argues, Paul Minor finally submitted a floor plan and several pre-storm photographs of the house.  He also notified the USAA adjusters that his house had been evaluated for value in the past and that evaluation by vendors for USAA would contain more photographs and diagrams. USAA contends it then immediately recalled the value evaluations from storage, used the additional floor plan and photographs, and reevaluated the estimates of wind damage based upon this new information. Shortly thereafter, USAA updated its original adjustment and issued a supplemental check in the amount of $194,322.85 for damage to the dwelling/other structures.  At this point, USAA had made a total dwelling/other structures payment for wind damage of $231,568.71.

¶16.   USAA also argues that the Minors did not present a contents list to USAA until after filing the complaint and in response to discovery.  Further, USAA claimed that the list did not give specific descriptions of the contents, did not include estimated purchase prices, and did not include the condition of the property.  Nevertheless, USAA evaluated the contents lists for the items that may have been damaged by wind or windblown rain, and made payment.

¶17.   USAA also argued that the Mississippi Supreme Court decision in *United Services Automobile Association v. Lisanby*, 47 So. 3d 1172 (Miss. 2010), was "instructive."  USAA asserted that, in *Lisanby*, the supreme court held that USAA had an arguable basis for its

7

denial of a claim. *Id.* at 1178-79. Thus, USAA argued that the following facts were sufficient for the *Lisanby* court to find that USAA had legitimate and arguable reasons for its claims handling:

1. USAA did not arbitrarily declare that the damage was caused solely by flood;

2. USAA opened a homeowners' claim;

3. USAA completed its investigation before attributing the majority of the damage to flood; and

4. USAA prepared the wind damage estimates after receiving the independent engineering report.

In essence, USAA argued that the facts in this case were the same as in *Lisanby*; therefore, USAA asked the court to find that there was no genuine issue of a material fact in dispute and USAA was entitled to a judgment as a matter of law. M.R.C.P. 56(c).

### C. The Circuit Court's Findings

¶18. The circuit court agreed with USAA. The court entered an order that found:

> The Minors made claims for extra-contractual damages, including attorney's fees and punitive damages. The undisputed facts show that USAA had an arguable or reasonable basis for its claims decisions. The Minors did show credible material proof that USAA did not have a reasonable or arguable reason to make its claims decisions. *United Servs. Auto. Ass'n v. Lisanby*, 47 So. 3d 1172, (Miss. 2010) provided this Court with the necessary guidance. In *Lisanby*, the Mississippi Supreme Court ruled in favor of USAA on the extracontractual and punitive damages claims based upon USAA's same claims handling practices and decisions for the same Hurricane Katrina. As a matter of law, USAA acted with an arguable basis, and without malice, reckless disregard or gross negligence.

### D. This Court's Analysis

8

¶19.   A motion for summary judgment is governed by Mississippi Rule of Civil Procedure 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

There are two parts to this rule.  First, the court must determine that there is "no genuine issue as to any material fact."  *Id.*  Second, the court must determine that the movant is "entitled to a judgment as a matter of law."  *Id.*

¶20.   Our review is de novo.  But we start with the circuit court's order and consider its findings.  The order appears to contain an obvious contradiction.

¶21.   The circuit court found that "[t]he undisputed facts show that USAA had an arguable or reasonable basis for its claims decisions."  Yet, in the next sentence, the court also found "[t]he Minors *did show* credible material proof that *USAA did not have a reasonable or arguable reason* to make its claims decisions." (Emphasis added).  As early as *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983), the court recognized:

> A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of disputed fact issues.  Accordingly, the court cannot try issues of fact on a Rule 56 motion; it may only determine whether there are issues to be tried.

¶22.   A summary judgment motion requires that the circuit court and this court consider not whether USAA has presented evidence to prove that it possessed a legitimate or arguable basis for its claims decisions.  Instead, we must decide whether there is a genuine issue of a material fact in dispute as to whether USAA possessed a legitimate or arguable basis for

9

its claims decisions.

¶23.    The circuit court's finding that "[t]he Minors *did show* credible material proof that *USAA did not have a reasonable or arguable reason* to make its claims decisions" leads to the conclusion that this finding was and should have been enough to defeat the motion for partial summary judgment.  This finding acknowledges that there was a genuine issue of a material fact in dispute, which would prohibit the grant of a summary judgment under Rule 56(c) of the Mississippi Rules of Civil Procedure.

¶24.    Next, the circuit court relied on *Lisanby*, to conclude that, "[a]s a matter of law, USAA acted with an arguable basis, and without malice, reckless disregard or gross negligence." *Lisanby* is indeed "instructive," but there are important differences. In *Lisanby*, the circuit court did not grant a partial summary judgment as to punitive or extracontractual damages before trial.  Instead, after hearing all of the evidence presented at trial, the court "declined to submit the issue of punitive damages to the jury, but awarded the plaintiffs an additional $302,920.44 in attorneys' fees and $211,069.47 in litigation expenses." *Lisanby*, 47 So. 3d at 1175 (¶5).

¶25.    Further, the *Lisanby* court did not rule that USAA's Hurricane Katrina claims practices were proper.  Instead, the court merely affirmed the circuit court's decision to deny further consideration of punitive damages because it found: "[O]n appeal, the plaintiffs cite numerous instances of conduct that they contend support a finding that USAA acted in bad faith. *However, most of these allegations are not supported by the record,* and USAA persuasively disputes all of them without response from the plaintiffs." *Id.* at 1178 (¶19)

(emphasis added). We find that the circuit court's finding that "[i]n *Lisanby*, the Mississippi Supreme Court ruled in favor of USAA on the extra-contractual and punitive damages claims based upon USAA's same claims handling practices and decisions for the same Hurricane Katrina" was an incorrect statement of the supreme court's ruling in *Lisanby*. In fact, in *Lisanby*, the supreme court held that the plaintiffs failed to present sufficient evidence that would allow the punitive- and extracontractual-damage claims from going to the jury. *Id.* at 1178-79 (¶¶19-24). Hence, the court affirmed the circuit court's decision, after hearing evidence at trial, to deny the plaintiffs an opportunity to present their punitive-damage claim and reversed and rendered the award of attorney's fees and litigation expenses. *Id.* at 1179 (¶24). Such finding does not support the grant of summary judgment here.

¶26. Based on our review, we find that there was evidentiary support for several issues that would support the Minors' claims for punitive and extracontractual damages. We limit our discussion to two important issues.

¶27. First, the evidence of USAA's failure to consider the information that the Minors had provided to USAA in the pre-Katrina underwriting was a genuine issue of material fact in dispute. In paragraph 16 above, we discuss USAA's contention that "it repeatedly requested the Minors to provide more information so USAA could further adjust the claim" and then USAA argued that "after many requests, Paul Minor . . . notified the USAA adjusters that his house had been evaluated for value in the past and that evaluation by vendors for USAA would contain more photographs and diagrams."

¶28. On at least two occasions before Hurricane Katrina, in 1994 and again in 2001, USAA

11

sent underwriters to visit the Minors' property. The purpose of these visits was for USAA to evaluate the underwriting risk and determine the appropriate premium to be charged. Thus, before the storm and the damage, USAA had a substantial amount of information about the Minors' property that would be, and ultimately was, useful in the adjustment of the Minors' claims. This was evidence that USAA had detailed information in its possession from the beginning of the Minors' claim that it did not use; and had USAA used the information in a timely manner, the Minors' claims would have been paid much sooner. In fact, once USAA used this information, it issued a supplemental check for damage to dwelling/other structures. The Minors correctly argue that this information was at all times available to USAA, as it was part of USAA's corporate records.

¶29. From the time the claim was initiated, USAA had in its possession the 1994 and 2001 inspections and appraisal reports that established and set the value of the structures and contents; along with detailed diagrams showing square footage of the home, guest house and other structures; in addition to the numerous photographs of these buildings showing the location of all windows (approximately 90) and the unique floor-to-ceiling glass doors and windows that are 360 degrees around the house. Included in the appraisal reports were numerous photographs that depicted the Minors' personal contents located in every room in the house and "special features" that discussed the high quality of their personal property, i.e., "antique rugs throughout the home"; "special marble"; "fine arts and expensive jewelry"; and "a collection of fine wine" in the wine cellar.

¶30. Also, USAA had an engineer's report entered into its Information Management

12

System (IMS) by adjuster Teri Bergstrom that put USAA on notice that all the window systems had been damaged by the wind forces of Katrina, along with her "confidential" conclusion that this report makes USAA "accountable to replace all the windows and opens" up payment for "contents in all the rooms (the entire house) with windows." The confidential memo, which was not entered in the IMS, included a comment by Bergstrom about what their USAA team leader would think about the engineer's window observations: "If we're paying for all the windows it would open up contents in all the rooms with windows. You may want to discuss this with your team leader." Bergstrom's final words were, "You know he won't be happy w/that."

¶31. Based on this information, it appears that USAA's adjuster concluded that USAA was accountable to pay for the losses to contents in the entire home. Yet USAA did not make a payment for loss of contents for almost four years, until May 2013, approximately three months before the commencement of the trial, and for only $67,864.23.

¶32. This is certainly evidence that there is a genuine issue as to a material fact in dispute as to why USAA had engineering information in its possession, since March 2006, that concluded all of the windows in the main structure were destroyed by wind and that would make USAA liable for all of the contents in those rooms; yet no payment was made until just before the trial. There was also evidence that there is a genuine issue as to a material fact in dispute as to why USAA told the Minors, in a letter dated June 18, 2006, that "based on its engineer report" USAA would only consider payment for contents on the southern elevation, when the engineer and the USAA adjuster had said the insurance company was accountable

13

for contents in all of the rooms.

¶33. We find that this evidence was sufficient to conclude that there was a genuine issue of a material fact in dispute as to whether USAA had an arguable and legitimate basis to deny or delay payment to the Minors.

¶34. Second, there was a genuine issue of material fact in dispute as to the damage caused by the storm surge. As discussed in paragraph 14 above, USAA hired PT&C, an independent professional engineering firm, which opined that "the remainder of the structure was destroyed by the estimated ten (10) foot storm surge." There was evidence of an Elevation Certificate, dated April 2006, that indicated the Minors' property was at an elevation of almost fifteen feet, which would have been above the storm surge. In fact, the exact amount of storm surge was in dispute in this trial. There was evidence at trial that the storm surge was as high as twenty-one feet. Regardless, there was conflicting evidence as to the height of storm surge and whether there was a legitimate or arguable basis for USAA to determine that a storm surge caused or contributed to the destruction of the residence. Ultimately, this was an issue decided by the jury.

¶35. To be clear, this Court does not find that the Minors are entitled to present their claims for punitive or extracontractual damages to a jury. Instead, we merely find that there was a genuine issue of material fact in dispute and that USAA was not entitled to a judgment as a matter of law on this issue before trial. Thus, we conclude that it was reversible error for the circuit court to grant USAA's motion for partial summary judgment and dismiss the Minors' claim for punitive and extracontractual damages before trial. Therefore, we reverse and

remand this issue for further proceedings consistent with this opinion.

> II. *Whether the court erred in giving Jury Instruction D-29b.*

¶36. Next, the Minors argue the circuit court was in error when it gave Jury Instruction D-29b. They claim that this prevented the possibility of an award of the policy limits based on a total loss.

¶37. "Jury instructions are within the discretion of the trial court and the settled standard of review is abuse of discretion." *Melvin v. Cleveland Nursing & Rehab., LLC*, 159 So. 3d 623, 626 (¶8) (Miss. Ct. App. 2015). "[T]he instructions are to be read as a whole." *Id.* "On appeal, [we] analyze whether a jury instruction correctly stated the law and was supported by the evidence." *Id*.

¶38. USAA submitted Jury Instruction D-29, and it was later withdrawn. The court made modifications, at the Minors' request, in Instruction D-29a. It was further modified and was given to the jury as Instruction D-29b. The following is Jury Instruction D-29b, and the jury's answers are included and underlined:

> Please answer the following questions by applying the instructions of law given to you. Answer the questions in order. Follow the instructions and brackets concerning which questions to answer.
>
> Number 1 — Do you find by a preponderance of the evidence that USAA correctly estimated $524,606.63 as the total covered damages under the plaintiffs' insurance policy and correct[ly] tendered $297,432.94 as the total amount owed after reductions for the deductible and recoverable depreciation? If your answer to Question Number 1 was yes, then you can stop.
> (YES or NO)  No
>
> Number 2 — Do you find by a preponderance of the evidence that any damage over and above $288,719.39 was caused to the Minors' house solely by wind

15

or wind-driven rain? And there's a place for you to mark yes or no. If your answer to Question Number 1 was no, then you skip Question Number 3 and go on to 4. If your answer to Question 2 was yes, then you answer Number 3. (YES or NO)   Yes

Number 3 — What additional actual cash value dollar amount of damage, if any, was caused to the Minors' house solely by wind or wind-driven rain? The figure you fill in the blank below cannot exceed $739,280.61 and there is a blank for you to place the dollar amount.
$  739,280.61

Number 4 — Do you find by a preponderance of [the] evidence that any damage over and above $27,797.09 was caused to the Minors' detached carport and guest cottage solely by wind or wind-driven rain? Answer yes or no. If your answer to Question Number 4 was no, then you skip Question Number 5 and go to Question Number 6. If your answer to Question 4 was yes, then you answer Number 5.
(Yes or No)   Yes

Number 5 — What additional actual cash value dollar amount of damage, if any, was caused to the Minors' detached carport and guest cottage solely by wind or wind-driven rain? The figure you fill in cannot exceed $121,202.91 and there is a blank for you [to] place an amount.
$  121,202.91

Number 6 — Do you find, by a preponderance of [the] evidence, that any damage over and above $208,090.15 was caused to the Minors' contents solely by wind or wind-driven rain? And there's a blank for you to answer yes or no. If your answer to Question 6 was no, skip Question 7 and go on to Question 8. If your answer to Question 6 was yes, then you answer Question 7.
(Yes or No)   Yes

Number 7 — What additional dollar amount of damage, if any, was caused to the Minors' contents solely by wind or wind-driven rain? The figure you fill in the blank cannot exceed $562,909.85, and there's a blank for a dollar amount.
$  562,909.85

Number 8 — Do you find by a preponderance of the evidence that the Minors incurred any additional or increased living expenses over and above $2,000 during the year following Hurricane Katrina because their Ocean Springs

16

house was rendered unfit to live in due to damage caused solely by wind or wind-driven rain? And there's a blank for you [to] answer, yes or no. If your answer to Question 8 was no, skip Question 9 and go to Question 10. If your answer to Question 8 was yes, then answer Question 9.
(Yes or No) __No__

Number 9 — What additional dollar amount, if any, of additional increased living expenses did the Minors incur within the year following Hurricane Katrina? The figure you fill in the blank below cannot exceed $203,600, and there's a blank for a figure for you to fill in if that [is] appropriate.
$ __0__

Number 10 — Do you find by a preponderance of the evidence that the Minors incurred any loss of refrigerated products because of damage caused solely by power failure or mechanical breakdown? There's a blank for a yes or a no answer. If your answer to Question 10 was no, stop here. If your answer to Question 10 was yes, then answer 11.
(Yes or No) __Yes__

Number 11 — What additional dollar amount of damage, if any, was caused to the Minors' refrigerated products solely by power failure or mechanical breakdown? The figure you fill in the blank cannot exceed $500, and there's a blank for a dollar amount.
$ __500.00__

Number 12 — Do you find from a preponderance of the evidence that the Minors incurred a loss of the boathouse and shed, as unscheduled structures, caused solely by wind or wind driven rain? And there is a blank for you to answer yes or no. If your answer to [Q]uestion 12 is no, then proceed to [Q]uestion 14, below. If you answer is yes, go to [Question] 13, below.
(Yes or No) __Yes__

Number 13 — What additional dollar amount, if any, was caused to the Minors as a result of the loss of the boathouse and shed? The figure you fill in the blank below cannot exceed $102,800.00
$ __102,800.00__

Number 14 — Do you find that the Minors incurred a loss as a result of being charged two deductibles of $20,600.00 for a total of $41,200.00? If your answer is no, proceed no further. If your answer is yes, then proceed to question 15, below.

17

(Yes or No)  __Yes__

Number 15 — The Minors were damaged in the amount of $__20,600.00__ as a result of being charged twice for deductibles.

¶39.    The review of an insurance claim begins with the wording of the policy. *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 608 (¶17) (Miss. 2009).  Homeowner's insurance policies "typically require that property losses be computed on an actual cash value or on a replacement value basis, with the latter coverage being more expensive as it allows a more generous valuation."  Jeffrey Jackson & D. Jason Childress, *Mississippi Insurance Law and Practice* § 15:27 (2016).  Here, the USAA policy issued to the Minors was a replacement-cost policy.

¶40.    The purpose of a replacement-cost policy is "[t]o protect homeowners from the predicament of not having enough assets to replace depreciated property that is destroyed or damaged."  Robert H. Jerry II, *Understanding Insurance Law* § 93, at 689 (3d ed. 2002).  Replacement cost, as defined in the policy, is "the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen."  If an identical item is no longer available, "replacement cost will be the cost of a new item which is similar to the insured [item], and of like quality and usefulness."

¶41.    A replacement-cost policy requires that the homeowner actually rebuild a home in order to receive the replacement-cost benefit of the policy.  5 Jeffrey E. Thomas & Susan Randall, *New Appleman on Insurance Law* § 53.05[3][c][iii] (2016).  "Requiring an insured to rebuild is designed to avoid the moral hazard of leaving an insured in a better situation

18

after a loss." *Id*. "Mere intention to rebuild or replace is not sufficient to receive proceeds based on replacement costs." *Id*.

¶42.    Also, "[u]nder a replacement cost policy, an insured will only receive actual cash value until the property is actually repaired or [replaced]." *Id*. Actual cash value is the replacement cost of property, less depreciation." *Mississippi Insurance Law and Practice,* at § 15:27. Depreciation "takes into account the age of the property at the time of loss, the extent of its use, its obsolescence, and other factors affecting its value." *Understanding Insurance Law,* at 691. How depreciation is calculated is a factor in the determination of the homeowner's recovery. *New Appleman on Insurance Law,* at § 53.05[1]. Here, the Minors' policy did not define depreciation, nor did it specify how depreciation would be calculated.

¶43.    Pursuant to the "Loss Settlement" provisions of the Minors' policy, when a covered property loss occurs under Coverage A (dwelling) or Coverage B (other structures), losses are settled at replacement cost without deduction for depreciation, subject to the following:

  (1)    If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, [USAA] will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

    (a)    the limit of liability under this policy that applies to the building;

    (b)    the replacement cost of that part of the building damaged for like construction and use on the same premises; or

    (c)    the necessary amount actually spent to repair or replace the damaged building.

(2) If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, [USAA] will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:

  (a) the actual cash value of that part of the building damaged; or

  (b) that proportion of the cost to repair or replace, after application of deductible and without deduction for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

. . . .

(4) [USAA] will pay no more than actual cash value of the damage unless:

  (a) actual repair or replacement is complete. . . .

(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for physical loss to buildings on an actual cash value basis. You may then make claims within 180 days after loss for any additional liability on a replacement cost basis.

¶44. When a covered property loss occurs under Coverage C (personal property), losses are settled at full replacement cost without deduction for depreciation, subject to the following loss settlement procedures:

(a) [I]t is [USAA's] option to:

  (1) replace or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation, or

  (2) pay you the cost to repair or restore the property to the condition it was in just before the loss, or

20

(3)   pay you the necessary amount actually spent to repair or replace the damaged property.

(b)   [USAA] will pay no more than actual cash value until repair or replacement of the damaged property is completed, unless the entire loss is less than $500.

(c)   You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability under the terms of this endorsement.

¶45.   The Minors argue that Instruction D-29b peremptorily capped and limited the amount of damages the jury could award. Specifically, they claim that Instruction D-29b "incorrectly included $86,947.78 for depreciation and deductible" for the main house.[1] The Minors argue that rather than allowing the jury to award the total value owed to the Minors, the circuit court "invaded the province of the jury and preempted their verdict by incorrectly allowing USAA to receive credits of the main structure for 'recoverable depreciation.'" However, such argument does not consider the clear and unambiguous policy language that included a two-percent deductible and required payment of actual cash value unless repair or replacement was complete.

¶46.   The Minors also argue that Instruction D-29b incorrectly included depreciation of $140,225.92 for the personal property. The Minors argue that by incorrectly allowing USAA to depreciate the true value of the contents, Instruction D-29b left the Minors with a shortfall of $140,225.92. However, the policy clearly provided for payment on an actual-cash-value basis. To determine the actual cash value, USAA was required to estimate replacement cost,

---

[1] The total amount of $86,947.78 includes depreciation of $66,387.77 and a deductible of $20,560.

21

less depreciation.

¶47.    The amounts included in Instruction D-29b for the house and personal property represent the estimated replacement cost of the wind-damaged items.  Pursuant to the policy, the Minors were compensated for these wind-damaged items on an actual-cash-value basis, with depreciation to be paid when replacement was complete.

¶48.    There was no evidence that the Minors repaired or replaced the items to which the recoverable depreciation applies.  Thus, the Minors are not entitled to recover the depreciation.  Although the Minors take issue with USAA's adjustment of their claims, such issue does not affect the plain language of their policy.

¶49.    USAA inspected the property and issued payment for damage it concluded was caused by wind.  Instruction D-29b asks the jury to determine whether there was any additional damage caused by wind over and above what was already considered by USAA.  Although Instruction D-29b limits the amount of damages the jury can award, such limitation was consistent with the policy language and was supported by the facts.  Thus, we find no error in the circuit court's decision to give Instruction D-29b.

> III.    *Whether the court erred in failing to correct the judgment to award policy limits.*

¶50.    During argument on their motion for a judgment notwithstanding the verdict (JNOV), the Minors asked the court to correct the verdict and to render a judgment in the amount of the policy limits.  The motion was denied.

¶51.    We apply a de novo standard of review to a circuit court's denial of a motion for a

JNOV. *Miss. Transp. Comm'n v. United Assets, LLC*, 188 So. 3d 508, 514 (¶24) (Miss. 2016). A motion for a JNOV "tests the legal sufficiency of the evidence supporting the verdict." *Watts v. Radiator Specialty Co.*, 990 So. 2d 143, 150 (¶21) (Miss. 2008). In reviewing a court's denial of a motion for a JNOV, "[w]e are required to consider the evidence in the light most favorable to the non-moving party." *McKenzie v. Supervalu, Inc.*, 883 So. 2d 1188, 1192 (¶17) (Miss. Ct. App. 2004). "[I]f the facts are so overwhelmingly in favor of the moving party that a reasonable juror could not have agreed with the verdict at hand, we must reverse." *Id*. "If there is substantial evidence, however, in support of the verdict, such that . . . reasonable [people] may have reached different conclusions, we must affirm." *Id*.

¶52. Here, we find sufficient evidence to support the verdict. The jury considered the evidence and found additional damage was caused solely by wind or wind-driven rain. The damages awarded were consistent with the policy language and supported by the facts. The Minors' request for the policy limits ignores the clear and unambiguous language in their policy that USAA will pay no more than the actual cash value of the damage unless actual repair or replacement is complete. Thus, we find no merit to this issue.

¶53. Finally, on appeal, the Minors ask this Court to correct the judgment by granting an additur in the amount of $88,647.75 for the structures and $140,225.92 for the personal property. Thus, the Minors want this Court to award the depreciation amounts as well as the deductible. As previously discussed, such an award is contrary to the policy language, as the Minors have neither repaired nor replaced the damaged property. Therefore, we find the

23

Minors' request for an additur is not well taken.

¶54. Further, we note that the Minors did not file a motion for an additur or for a new trial. Instead, the Minors only filed a motion for a JNOV and requested that the court "enter judgment in favor of [the Minors] in the amount of $524,606.63." Now, on appeal, the Minors argue that they should have been granted an additur of $228,873.67.

¶55. "An additur is only appropriate when the trial judge makes a finding that the damages awarded by the jury are inadequate because the jury was 'influenced by bias, prejudice, or passion' or the award was 'contrary to the overwhelming weight of [the] credible evidence.'" *Henson v. Riggenbach*, 982 So. 2d 432, 434 (¶9) (Miss. Ct. App. 2007) (citing Miss. Code Ann. § 11-1-55 (Rev. 2002)). Here, no such finding was made by the circuit court, as the Minors never moved for an additur.

¶56. "Issues raised for the first time on appeal are procedurally barred from review as they have not first been addressed by the trial court." *Burns v. Haynes*, 913 So. 2d 424, 429 (¶18) (Miss. Ct. App. 2005). As the Minors failed to raise this issue before the circuit court, their request for an additur is procedurally barred.

¶57. **THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS AFFIRMED IN PART, AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANTS AND ONE-HALF TO THE APPELLEE.**

**BARNES AND WESTBROOKS, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WILSON, J. ISHEE, FAIR AND GREENLEE,**

**JJ., NOT PARTICIPATING.**

**CARLTON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶58. I would affirm the judgment of the circuit court. I therefore concur in part and dissent in part from the opinion of the majority. I submit this separate opinion to set forth my dissenting view on the application of the law to the facts of this case.

¶59. I dissent from the majority's finding that the circuit court committed reversible error in granting USAA's motion for partial summary judgment and in dismissing the Minors' claim for punitive and extracontractual damages before trial. I respectfully submit that the record reflects no error in the circuit court's grant of summary judgment in favor of USAA or in its finding that the facts showed that USAA possessed an arguable, or reasonable, basis for its claims decisions. The record reflects that the circuit court concluded that as a matter of law, USAA acted with an arguable basis and without malice, reckless disregard, or gross negligence.[2]

¶60. Applicable law reflects that "an arguable reason for the denial of an insured's claim . . . has been defined as 'one in support of which there is some credible evidence.'" *Tipton v. Nationwide Mut. Fire Ins.*, 381 F. Supp. 2d 572, 579 (S.D. Miss. 2004). Arguable reason still exists even if there is "evidence to the contrary." *Hood v. Sears Roebuck & Co.*, 532 F. Supp. 2d 795, 803 (S.D. Miss. 2005). Jurisprudence also reflects that just because a jury disagrees with the insurance company's decision regarding coverage does not mean that the

---

[2] Any party to a civil action may move for summary judgment upon a claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. *See* M.R.C.P. 56(c).

company did not have an arguable basis. *United Servs. Auto. Ass'n (USSA) v. Lisanby*, 47 So. 3d 1172, 1179 (¶24) (Miss. 2010).[3] Under the applicable law, the plaintiff bears a heavy burden and must establish that the insurance company committed more than mere negligence in performing the investigation. *Id*. at 1178 (¶18).[4]

¶61. In *United American Insurance v. Merrill*, the supreme court cited *Windmon v. Marshall*, 926 So. 2d 867, 872 (Miss. 2006), and *Murphree v. Federal Insurance*, 707 So. 2d 523, 529 (Miss. 1997), which set forth established jurisprudence that "if there is a finding that there was a reasonable arguable basis to deny the claim then the appellant is not entitled to have the jury consider any bad faith award against the insurance company." *United Am. Ins. v. Merrill*, 978 So. 2d 613, 634 (¶105) (Miss. 2007). Further, "the plaintiff has a heavy burden to demonstrate to the circuit court that there was no reasonably arguable basis for the insurance carrier to deny the claim." *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So. 2d 833, 844 (Miss. 1984). In the case before us, the record reflects credible evidence that USAA possessed an arguable or reasonable basis for the adjustment and payment of the Minors' insurance claims. Therefore, in accordance with applicable law, no genuine dispute of material fact exists showing that the Minors are not entitled to have the jury consider any bad faith, extracontractual damages, or punitive damages.

¶62. After examining the applicable law and the evidence in the record, I submit that both the law and the record sustain the circuit court's findings in support of its decision granting

---

[3] *See also Sobley v. S. Nat. Gas Co.*, 302 F.3d 325, 330 (5th Cir. 2002).

[4] *See also Essinger v. Liberty Mut. Fire Ins.*, 529 F.3d 264, 271 (5th Cir. 2008).

summary judgment.[5]  A claim for extracontractual damages requires that the insured prove the insurance company acted in bad faith and lacked an arguable basis when it made its determination regarding the insured's claim. *Lisanby*, 47 So. 3d at 1178 (¶18).  A successful claim for punitive damages requires the insured to prove more than the lack of an arguable basis since the insured must also prove that "the insurance company acted with malice or gross and reckless disregard for the rights of the insured."  *U.S. Fid. & Guar. Co. of Miss. v. Martin*, 998 So. 2d 956, 970 (¶48) (Miss. 2008).  "[W]here there is a legitimate or arguable basis in the delay or denial of payments, there is no valid claim for punitive damages.*" Miss. Power & Light Co. v. Cook*, 832 So. 2d 474, 479 (¶8) (Miss. 2002).[6]

¶63.　On appeal in seeking reversal of the summary judgment granted below, the Minors assert the two following arguments as support for their claim for punitive and extracontractual damages: (1) that USAA lacked an arguable basis for its conclusion that a storm surge caused or contributed to the destruction of the Minors' residence and (2) that USAA lacked an arguable basis for its decision to not immediately pay the Minors their personal-property limits.  I will separately address the record support for the circuit court's

---

[5] *See Lisanby*, 47 So. 3d at 1185-86 (¶56) (reversing a jury verdict for extracontractual damages after finding that USAA's reliance on a report from an engineer, information from an adjuster, and information from the insured provided USAA with an arguable basis for its determination that only a portion of the insured's damage was caused by wind); *Anglado v. Leaf River Forest Prod., Inc*., 716 So. 2d 543, 547 (¶13) (Miss. 1998) (a de novo standard of review is applied to the appeal of a circuit court's grant of summary judgment).

[6] *See generally* D. Jason Childress, *Mississippi Insurance Law and Practice* § 13:14 (2016).

27

findings and grant of summary judgment for the dwelling/other structures claim and the personal-property claim.

¶64.    Regarding the Minors' dwelling/other structures claim, the record herein supports the circuit court's determination that USAA possessed an arguable basis when determining a storm surge caused some of the damage, as evidenced by USAA's reliance on independent engineer reports, adjustment inspections, photographs, and adjustment decisions.[7] The record is undisputed that Hurricane Katrina hit on August 29, 2005, and that the Minors reported their loss to USAA on January 16, 2006. The record shows that USAA immediately assigned adjusters to inspect the property and, within a week of the Minors' claim, USAA hired PT&C, an independent professional engineering firm, to inspect and offer a professional opinion as to causation, i.e., wind versus flood/storm surge, to determine if direct physical loss by wind contributed to the damage to the residence. USAA sought clarification from PT&C regarding damage to the window systems, and PT&C submitted the engineering report to USAA on March 2, 2006.

¶65.    On March 20, 2006, USAA asked the Minors for a floor plan of the residence but failed to receive the information from the Minors for over seven months. Despite lacking the floor plan, the record reflects that USAA adjusted the loss by relying on the engineer's report, adjuster information, and photographs. The record also reflects that on June 18, 2006,

---

[7] *See also Hoover v. United Servs. Auto. Ass'n*, 125 So. 3d 636, 643 (¶21) (Miss. 2013) (concluding that USAA possessed an arguable basis for denying a portion of the Hoovers' damages wherein USAA relied on the investigation of its adjusters and the reports of an engineering firm in denying aspects of the claim deemed excluded).

28

USAA advised the Minors that the majority of the damage to their home was the result of flooding and that an estimate of the wind damage was created based upon information then available. The replacement cost for the covered damage to the main dwelling, the guest house, and the carport was $55,805.86, and USAA paid the actual cash value of $35,245.86.

¶66. The record further reflects that USAA informed the Minors by letter dated June 18, 2006, that the dwelling/other structures claim was being held open because USAA had not yet received the requested floor plan, pre-loss photos, and personal-property list. According to the record, on October 24, 2006, and on December 5, 2006, Paul Minor provided the floor plan for the house and a few photos of the exterior of the home and explained that the remainder of the photos were lost in the hurricane.

¶67. In response to information provided by Paul, USAA then tracked down prior evaluations from 1994 and 2000. Despite still lacking some requested details, USAA then used this new information to estimate the wind damage more accurately. On March 29, 2007, USAA made a supplemental actual-cash-value payment to the Minors of $194,322.85. The record reflects that the Minors were advised that the amount of $66,387.77 was still available in recoverable depreciation that they could obtain for the covered damage upon completion of the repairs, in accordance with the terms of the Minors' replacement-cost policy.

¶68. The record shows that Minors received total payments of $229,568.71 for the wind damage to their insured structures. The Minors failed to provide any information to USAA disputing the PT&C engineer report until the Minors presented their expert reports as part

29

of this lawsuit. Clearly, the record supports the circuit court's finding of an arguable basis in support of USAA's payment and adjustment decisions regarding the Minors' dwelling/other structures claims given the evidence of USAA's reliance on the report of an independent engineer, claims-adjuster inspections, photographs, and information provided by the insured.

¶69. With respect to the adjustment of the Minors' personal-property claim, the record also supports the circuit court's determination that USAA's decisions similarly possessed an arguable basis. In adjusting the Minors' personal-property claim, the record reflects that USAA relied on PT&C's engineer report, information from the adjuster, information from the Minors, and photographs to determine which rooms could have had contents damaged by wind prior to the storm surge of Hurricane Katrina. Moreover, the record reflects that USAA repeatedly requested a list of the Minors' damaged personal property and that for three years, the Minors failed to provide any information about their personal property. Moreover, the list eventually provided by the Minors failed to contain the amount of detail required under the policy or in the discovery request; specifically, the list provided no quantity, description, actual cash value, and amount of the loss. The Minors also failed to provide any bills, receipts, and related documents to justify the figures in the inventory. USAA even resorted to filing a motion to compel for the depositions of the Minors' children, both of whom possessed knowledge of the house and its contents prior to the hurricane.

¶70. Despite the lack of required detail, the record shows that USAA adjusted the Minors' personal-property claim relying on information about the damage to the structure when

determining which damaged contents were covered. Using the independent engineer and the adjuster reports, USAA adjusted the Minors' personal-property claim, paying for certain items in rooms that had wind-related damage, and the adjuster researched the value of the damaged items. As acknowledged by the majority opinion, the record reflects without dispute that the Minors possessed a replacement-cost insurance policy that excluded damage caused by water/flood or storm surge. The record is also not in dispute that the Minors possessed no flood insurance. The record shows that since the contents had not been replaced, USAA provided the policy-mandated actual-cash-value payment.

¶71. Based upon the foregoing, the undisputed record reflects no unreasonable delay by USAA in the payment of and adjustment of the Minors' personal-property claim. In support of the circuit court's grant of summary judgment and findings, the record also shows without dispute that USAA possessed an arguable basis for its payment and adjustment decisions in its reliance upon the independent engineer reports, photographs, adjuster information, and information from the Minors, including the delinquently provided contents list that lacked the required detail.[8] I therefore would affirm the judgment of the circuit court.

**WILSON, J., JOINS THIS OPINION.**

---

[8] *See Lisanby*, 47 So. 3d at 1185-86 (¶56) (reversing a jury verdict for extracontractual damages after finding that USAA's reliance on a report from an engineer, information from an adjuster, and information from the insured provided USAA with an arguable basis for its determination that only a portion of the insured's damage was caused by wind).